# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| LASHIFY, INC., <br><br> Plaintiff, <br><br> v. <br><br> QINGDAO LASHBEAUTY COSMETIC CO., LTD. d/b/a WORLDBEAUTY, <br><br> Defendant. | Case No. 6:22-cv-776 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Lashify, Inc. ("Lashify") hereby files this Complaint against Qingdao Lashbeauty Cosmetic Co., Ltd. d/b/a Worldbeauty ("Worldbeauty"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to stop Worldbeauty from unlawfully making, using, selling, offering for sale, marketing, and importing artificial eyelash extension systems and components that infringe Lashify's intellectual property. The Accused Products include Worldbeauty's DIY lash extension product lines that comprise lash extensions with multiple lash clusters, such as the Worldbeauty segmented lash ribbons and segmented ribbon lashes, superfine band extensions, the DIY Eyelash Set and other DIY Eyelash Extension kits, other Worldbeauty lash extension products identified with a "C" and/or "S," and all other like Worldbeauty "DIY" lash extension products, each of which Worldbeauty designed to copy Lashify's revolutionary, award-winning, and patented lash extension system.

2. Worldbeauty's Accused Products infringe Lashify's patents, including U.S. Patent

1

Nos. 11,219,260 ("the '260 patent"), 11,253,020 ("the '020 patent"), 11,330,856 ("the '856 patent"), and 11,234,472 ("the '472 patent") (collectively, the "Patents-in-Suit").[1]  Lashify thus files this lawsuit not only to protect its own innovations, but also to protect further innovation in the beauty industry—innovation that otherwise would fall victim to the unfair and unlawful conduct of companies like Worldbeauty.

## THE PARTIES

3. Plaintiff Lashify is a corporation organized under the laws of Delaware, having a place of business in North Hollywood, California.

4. Upon information and belief, defendant Worldbeauty is a company organized and existing under the laws of China.

## JURISDICTION & VENUE

5. This action arises under United States patent laws, Title 35 of the United States Code.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

6. This Court has personal jurisdiction over Worldbeauty.

7. Upon information and belief, Worldbeauty is an entity organized under the laws of China.

8. Upon information and belief, Worldbeauty does not maintain a physical place of business in the United States.

9. Worldbeauty has targeted sales of the Accused Products to United States residents in the United States, including in Texas.

---

[1] Lashify also identifies a related patent, United States Patent No. 11,330,855, titled "Method of Applying Artificial Lash Extensions," issued on May 17, 2022 ("the '855 patent").  Lashify is investigating Worldbeauty's conduct regarding potential infringement of the '855 patent.  Upon information and belief, Worldbeauty specifically instructs United States retailers and/or end-users to apply Worldbeauty's Accused Products in a manner that infringes the '855 patent claims.

10. Worldbeauty offers for sale the Accused Products to United States residents in the United States and in Texas.

11. Worldbeauty has sold the Accused Products to residents in the United States and, upon information and belief, in Texas.

12. Worldbeauty imports the Accused Products into the United States and, upon information and belief, in Texas.

13. Upon information and belief, Worldbeauty owns or operates the website https://www.worldbeautyeyelashes.com/ ("Worldbeauty's Website").

14. Upon information and belief, Worldbeauty controls the content published and shown on Worldbeauty's Website, as well as the statements made on Worldbeauty's Website.

15. Worldbeauty's Website describes Worldbeauty as a "Professional Eyelash Manufacturer" who is the "[b]iggest eyelashes manufacturer in China," having "more than 10 years' manufacturing experience[]" who has "exported all kinds of eyelashes to Europe, USA, Korea, Australia, Canada, etc." (https://www.worldbeautyeyelashes.com/)

16. Worldbeauty's Website displays the Accused Products.

17. Worldbeauty's Website is published into the United States.

18. Worldbeauty's Website can be and is accessed by United States residents, including in Texas.

19. Worldbeauty's Website is an interactive and commercial website, displaying the Accused Products allegedly for manufacture and for sale by Worldbeauty, including for sale into the United States and in Texas.

20. Worldbeauty also offers the accused products through an Alibaba.com webpage at

https://luxuryminkeyelashes.en.alibaba.com/minisiteentrance.html?spm=a2700.details.cord-panyb.2.3f936a5a3wdcjp&from=detail&productId=1600289601115 ("Worldbeauty's Alibaba Page").

21.     Worldbeauty's Alibaba Page offers for sale the Accused Products into the United States and in Texas.

22.     Worldbeauty's Alibaba Page shows that the Accused Products have been sold into the United States.  For example, the Worldbeauty Alibaba Page for "Lashbeauty private label DIY segmented eyelash self-apply superfine band C D curl 8 -18mm ribbon faux mink cluster lashes" shows sales into the United States:

**Product Transaction Details**

United States

Based on the privacy policy, some of the data is sensitive and cannot be viewed.

| Buyer | Shipping Destination | Transaction Quantity | Transaction Date |
|---|---|---|---|
| u** | United States | 24 Pairs | 2022/06/21 |
| u** | United States | 3000 Pairs | 2022/05/19 |
| u** | United States | 50 Pairs | 2022/05/06 |
| u** | United States | 50 Pairs | 2022/05/06 |
| u** | United States | 5000 Pairs | 2022/05/03 |
| u** | United States | 50 Pairs | 2022/04/24 |
| u** | United States | 150 Pairs | 2022/04/24 |
| u** | United States | 50 Pairs | 2022/04/18 |

Previous  1  2  3  4  ...  10  Next   1/10  Go to  Page  View

(https://www.alibaba.com/product-detail/Lashbeauty-private-label-DIY-segmented-eyelash_11000001781150.html?spm=a2700.shop_plser.41413.13.55a762a1cnRkwk)

23.     Upon information and belief, Worldbeauty regularly visits the United States and enters the country with its products, including after the issuance of the Patents-in-Suit, with the purpose of marketing and encouraging sales of its products, including the Accused Products.

24. Worldbeauty has engaged in business activities in and directed to the United States as a whole, including Texas and this judicial district.

25. Worldbeauty has imported, offered for sale, sold, and/or advertised the Accused Products in the United States, including Texas and this judicial district; has committed the acts complained of herein in the United States that led to foreseeable harm and injury to Lashify; and has otherwise purposely availed itself of the privileges and benefits of the laws of the United States, including Texas and this judicial district.

26. This Court has specific personal jurisdiction over Worldbeauty for acts of infringement arising from Worldbeauty's marketing and offering for sale the Accused Products.

27. This Court also has personal jurisdiction over Worldbeauty pursuant to Federal Rule of Civil Procedure 4(k)(2).

28. Venue is proper in this judicial district over Worldbeauty at least pursuant to *In re HTC Corp.,* 889 F.3d 1349 (Fed. Cir. 2018) because Worldbeauty is an alien defendant, and because this Court has personal jurisdiction over Worldbeauty for the acts complained of herein.

**LASHIFY'S INNOVATIVE LASH EXTENSION SYSTEM**

29. Lashify is a California start-up founded by Ms. Sahara Lotti who invented the most natural-looking false lash system in the industry. The Lashify system is a revolutionary award-winning do it yourself ("DIY") luxury lash extension system that creates salon quality lash extensions in record time and in the comfort of one's home. The system is easy to use, and, unlike salon extensions, is damage-free to natural lashes; it creates infinite possibilities for all eye shapes in minutes. As a result, the Lashify system has been recognized, used, and touted by Oscar-winning celebrities, world-renowned beauticians, popular magazines, online publications, and its many users.

30. Renée Zellweger, Reese Witherspoon, Nicole Kidman, Lupita Nyong'o, Kristen Bell, Kourtney Kardashian, Claire Danes, Melissa McCarthy, Janelle Monáe, Cynthia Nixon, Jessica Simpson, Maggie Gyllenhaal, Tracie Ellis Ross, Salma Hayek, Awkwafina, Liv Tyler, and Lena Dunham are just a few of the artists and influential figures who have used the Lashify system. The Lashify system "walked" the red carpets at the Golden Globes, Grammys, Emmys, Met Gala, and other globally followed events. The Lashify system has been used by influential makeup-artists Ariel Tejada, Jessica Smalls, Nick Barose, Anton Khachaturian, Matthew Van Leeuwen, Kirin Bhatty, and many more. It has been featured in publications such as InStyle, Elle, Glamour, Vogue, Allure, The Knot, Shape, and many others. And it has received numerous industry awards, including 2022 InStyle Beauty Editors' Pick, 2021-2022 The Beauty Authority NewBeauty Award Winner, 2021 Cosmopolitan Holy Grail Beauty Award, 2019 Glamour Beauty Award Winner, The Knot Beauty Awards 2019 Winner, and 2019 Shape Editor Pick. Thus, unsurprisingly, customers of the Lashify system call it the best invention since sliced bread, a game changer, and the lash system you didn't know you needed.

31. To date, the Lashify system has been used by hundreds of thousands of customers.

32. Individual lash extensions done at salons are time-consuming and attach to a single lash with glue. Due to the ingredients of the glue and excess fiber weight, traditional lash extensions can be damaging. They can pull on natural lash roots, causing damage and lash loss. This time-consuming, costly process needs to be repeated every three weeks to maintain the desired results.

33. Other artificial lashes existed before the Lashify system, and still do. One option is strip lash extensions, which is a single band of lashes the length of a natural eye that is designed to be applied with a removable adhesive over a natural top lash line. Strip lashes weigh heavily

on the natural lashes, appear "faux," and are not comfortable to be worn for long periods of time. Another option is single cluster lash extensions, which are solitary units of closely grouped individual lashes designed to be applied with a hard glue, making them similarly heavy to the eyes, difficult to apply, time consuming, and damaging if worn for extended periods of time or slept with.

34.     Ms. Lotti, a frequent wearer of salon lash extensions, uninspired and frustrated by the lack of options in the lash industry and recognizing the need for innovation in the industry, set out to design a product that would meet her high standards.  Ms. Lotti, herself a relentless innovator, put aside her career to fully devote herself to a new enterprise and passion.  She created a lash lab in her living room; immersed herself in extensive studies of the human eyelid, the shape of lash lines, and various chemical compositions; and tested on her own eyelashes various prototypes and potential new product options.  After working tirelessly toward her goal, she had created the Gossamer® lash: the lightest, flattest, and most natural-looking artificial lash extension that merges with natural lashes like a coat of mascara—all without the skill of a lash artist or the time-consuming and damaging process offered by the salons.

35.     Ms. Lotti's research and development efforts also resulted in her discovery of Lashify's unique, hypoallergenic chemical compositions that are safe even for sensitive eyes.  She invented the four components of the Lashify system in Lashify's Control Kit™: (1) the Gossamer® lashes in sterile lash cartridges, (2) the Fuse Control® Wand for applying the lashes, (3) the Whisper Light™ flexible bond, and (4) the Glass lash extender that seals the lashes in the event of tackiness.  Each is innovative and, in combination, is a revolution that changed the lash industry.

36.     Today, as a result of Ms. Lotti's hard work and ingenuity, Lashify is recognized as a market leader in the design of revolutionary lash extension products.  A testament to its innovation and the strength of its brand is Lashify's extensive worldwide intellectual property portfolio, including United States and foreign patents, federally registered trademarks, and many pending patent and trademark applications.

37.     The Lashify Control Kit™ includes two sets of Gossamer® lashes set in Lashify's innovative cartridge, a patented wand for fusing the lashes underneath the natural lash line, a bond, a sealer, and a luxury case:



38.     Gossamer® lashes are comprised of synthetic fibers, such as polybutylene terephthalate ("PBT")—the best quality synthetic silk in the world sourced from Korea—heated to form delicate artificial lash sections, which upon application seamlessly blend with the natural lashes.



The Gossamer® lashes are designed to fit underneath the natural lashes due to their thin band and lightweight structure, come in a variety of lengths, fluffiness, curvatures, and colors, and thus can be applied in virtually unlimited positions and arrangements.  Indeed, users devise "maps" specifying locations of different types of Gossamer® lashes along one's natural

8

lash line to achieve looks ranging from natural to glamorous to dramatic, and even colored. The revolutionary flat base and positioning of clusters along the base invented by Ms. Lotti also gives users the ability to stack Lashify's Gossamers® for volume, if desired.

39. The Fuse Control® Wand is used to apply the Gossamer® lashes underneath the natural lashes. It has a pleasing fluid design and comes in a variety of colors. It is used to fuse the Gossamer® lashes to the natural lash line for a stable and proper placement for up to 10 days.



40. The Whisper Light™ Dual-Sided bond is a flexible, hypoallergenic adhesive designed exclusively to hold Gossamer® lashes. Its Biotin and Micro-flex technology create a flexible and nourishing cushion underneath the lash line, protecting the roots and ensuring damage-free wear.

41. The Glass is a unique waterproof lash extender. Its application is the last step in Lashify's unique system. It finishes the Lashify look, sealing and extending the wear of the Gossamer® lashes.

**WORLDBEAUTY'S COPYING OF LASHIFY'S SYSTEM AND USE OF LASHIFY'S INTELLECTUAL PROPERTY**

42. Unsurprisingly, albeit unfortunately, Lashify's innovative system attracted not just a loyal customer base, but also copycats seeking to profit from the fruits of Ms. Lotti's hard work and dedication. One of them is Worldbeauty, who blatantly copied the revolutionary Lashify system while proclaiming it to be its own.

43. Worldbeauty, claiming to be one of the world's largest artificial lash extension

manufacturing companies, launched its Accused Products after Lashify's system was offered to the public, and willfully copied Lashify's technology without license, permission, or authorization to create its knock-off products.

44. Lashify offers its system as a starter kit with a set of lashes, applicator, bond, and sealer. Just like Lashify, Worldbeauty makes the DIY Lash Kits Cluster Eyelash Extension kit including Gossamer®-like lash extensions, an applicator, and bond.

45. And just like Lashify, Worldbeauty's Accused Products are marketed to be placed under a natural lash line, designed to provide the same look as Lashify Gossamer® lashes and, on information and belief, are made of similar synthetic fibers using similar technology.

46. Indeed, upon information and belief, the similarity of the products was Worldbeauty's intent. Worldbeauty set as its goal to copy Lashify's products and design, unlawfully taking advantage of Lashify's innovation in the industry.

47. For example, upon information and belief, Worldbeauty knew about Lashify for years and purchased Lashify's products before Worldbeauty started to sell its own Accused Products, products so strikingly similar to Lashify's patented products.

48. Upon information and belief, Worldbeauty undertook all of its conduct—ultimately plucking the finished product from Lashify after Ms. Lotti had dedicated substantial resources and years of her life to its development—with full knowledge that Worldbeauty was not the rightful inventor or owner of the accused lash extension products.

**FIRST CAUSE OF ACTION**
**(Infringement of United States Patent No. 11,219,260)**

49. Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

50. On January 11, 2022, the '260 patent, entitled "Artificial Lash Extensions," was

duly and legally issued to Lashify. Lashify is the lawful owner by assignment of all right, title, and interest in the '260 patent, including the rights to exclude others and to sue and recover damages for infringement.

51. A true and correct copy of the '260 patent is attached as **Exhibit A**.

52. Worldbeauty has been placed on actual notice of the '260 patent at least by the filing of this Complaint. Worldbeauty also has constructive notice of the '260 patent at least by virtue of Lashify's marking of its patented products.

53. Worldbeauty has infringed and continues to infringe at least claim 1 of the '260 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '260 patent.

54. Worldbeauty's Accused Products meet each and every limitation of at least claim 1 of the '260 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a plurality of artificial lash extensions comprising a plurality of clusters of artificial hairs with each cluster having at least two artificial hairs. The grouping of hairs in the extensions are the clusters. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material. The lash extensions also comprise a base from which the clusters of hairs protrude. Upon information and belief, the extensions' clusters are attached to the base by at least an application of heat. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products. Within the clusters of the Accused Products, at least some of the artificial hairs are coupled to one another at a respective part of the base. In addition, the bases of the extensions are designed to attach to the underside of the natural lashes.

55. Worldbeauty's acts of infringement of the '260 patent were and are undertaken without authority, permission, or license from Lashify. Worldbeauty's infringing activities therefore violate 35 U.S.C. § 271.

56. As a direct and proximate consequence of Worldbeauty's infringement of the '260 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Worldbeauty is enjoined from infringing the '260 patent.

57. Worldbeauty has had actual knowledge of the '260 patent and its infringement thereof since at least the filing of this Complaint. In addition, upon information and belief, Worldbeauty knew of Lashify's patented products and the '260 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property. Accordingly, Worldbeauty's infringement of the '260 patent is willful.

**SECOND CAUSE OF ACTION**
**(Infringement of United States Patent No. 11,253,020)**

58. Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

59. On February 22, 2022, the '020 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify. Lashify is the lawful owner by assignment of all right, title, and interest in the '020 patent, including the rights to exclude others and to sue and recover damages for infringement.

60. A true and correct copy of the '020 patent is attached as **Exhibit B**.

61. Worldbeauty has been placed on actual notice of the '020 patent at least by the filing of this Complaint. Worldbeauty also has constructive notice of the '020 patent at least by virtue of Lashify's marking of its patented products.

62. Worldbeauty has infringed and continues to infringe at least claim 1 of the '020 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '020 patent.

63. Worldbeauty's Accused Products meet each and every limitation of at least claim 1 of the '020 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a plurality of artificial lash extensions. The lash extensions are designed to attach adjacent to one another on the underside of a natural lash. The lash extensions also comprise a plurality of clusters of artificial hairs comprising at least two artificial hairs. The grouping of hairs in the lash extensions are the clusters. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material. The lash extensions also comprise a base from which at least two hairs of each cluster protrude. Upon information and belief, the artificial hairs are connected to one another at the base by at least an application of heat. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.

64. Worldbeauty's acts of infringement of the '020 patent were and are undertaken without authority, permission, or license from Lashify. Worldbeauty's infringing activities therefore violate 35 U.S.C. § 271.

65. As a direct and proximate consequence of Worldbeauty's infringement of the '020 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Worldbeauty is enjoined from infringing the '020 patent.

66. Worldbeauty has had actual knowledge of the '020 patent and its infringement thereof since at least the filing of this Complaint. In addition, upon information and belief,

Worldbeauty knew of Lashify's patented products and the '020 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property. Accordingly, Worldbeauty's infringement of the '020 patent is willful.

**THIRD CAUSE OF ACTION**
**(Infringement of United States Patent No. 11,330,856)**

67. Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

68. On May 17, 2022, the '856 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify. Lashify is the lawful owner by assignment of all right, title, and interest in the '856 patent, including the rights to exclude others and to sue and recover damages for infringement.

69. A true and correct copy of the '856 patent is attached as **Exhibit C**.

70. Worldbeauty has been placed on actual notice of the '856 patent at least by the filing of this Complaint. Worldbeauty also has constructive notice of the '856 patent at least by virtue of Lashify's marking of its patented products.

71. Worldbeauty has infringed and continues to infringe at least claim 1 of the '856 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '856 patent.

72. Worldbeauty's Accused Products meet each and every limitation of at least claim 1 of the '856 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a plurality of lash extensions comprising a plurality of adjacently aligned clusters. The clusters comprise multiple artificial hairs. The hairs in the clusters are artificial because they

do not comprise natural human hair, but instead a synthetic material. The first and second cluster have an intersecting portion where at least one hair from each of the first and second clusters intersect with each other, wherein at said intersection at least one hair from one cluster crosses one hair from another cluster. Upon information and belief, the first and second clusters are connected at the intersecting portion by at least an application of heat. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.

73. Worldbeauty's acts of infringement of the '856 patent were and are undertaken without authority, permission, or license from Lashify. Worldbeauty's infringing activities therefore violate 35 U.S.C. § 271.

74. As a direct and proximate consequence of Worldbeauty's infringement of the '856 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Worldbeauty is enjoined from infringing the '856 patent.

75. Worldbeauty has had actual knowledge of the '856 patent and its infringement thereof since at least the filing of this Complaint. In addition, upon information and belief, Worldbeauty knew of Lashify's patented products and the '856 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property. Accordingly, Worldbeauty's infringement of the '856 patent is willful.

**FOURTH CAUSE OF ACTION**
**(Infringement of United States Patent No. 11,234,472)**

76. Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

77. On February 1, 2022, the '472 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify. Lashify is the lawful owner by assignment of all right, title,

and interest in the '472 patent, including the rights to exclude others and to sue and recover damages for infringement.

78. A true and correct copy of the '472 patent is attached as **Exhibit D**.

79. Worldbeauty has been placed on actual notice of the '472 patent at least by the filing of this Complaint. Worldbeauty also has constructive notice of the '472 patent at least by virtue of Lashify's marking of its patented products.

80. Worldbeauty has infringed and continues to infringe at least claim 1 of the '472 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products made by methods that infringe the '472 patent.

81. Upon information and belief, Worldbeauty practices or causes to be practiced the manufacturing method claimed in the '472 patent, as Worldbeauty's Accused Products meet each and every limitation of at least claim 1 of the '472 patent, either literally or under the doctrine of equivalents. For example, Worldbeauty practices the method of manufacture is because Worldbeauty has made the Accused Products which comprise the structural limitations in the claims. The Accused Products include artificial lash extensions comprising a plurality of clusters of artificial hairs comprising multiple hairs. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material. Within the lash extension, the artificial hairs in at least one cluster are in contact with each other. The lash extension also comprises a base, to which the clusters are attached by an attachment process. Upon information and belief, the attachment process at least includes applying heat to at least a portion of the plurality of the clusters to attach the clusters to the base. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products. In addition, the lash extension's base is designed to attach to the underside of the natural lashes. Upon information and belief, only by

practicing the '472 patent's manufacturing method can such a product be created.

82. Worldbeauty's acts of infringement of the '472 patent were and are undertaken without authority, permission, or license from Lashify. Worldbeauty's infringing activities therefore violate 35 U.S.C. § 271.

83. As a direct and proximate consequence of Worldbeauty's infringement of the '472 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Worldbeauty is enjoined from infringing the '472 patent.

84. Worldbeauty has had actual knowledge of the '472 patent and its infringement thereof since at least the filing of this Complaint. In addition, upon information and belief, Worldbeauty knew of Lashify's patented products and the '472 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property. Accordingly, Worldbeauty's infringement of the '472 patent is willful.

## PRAYER FOR RELIEF

WHEREFORE, Lashify prays for the following relief:

1) A judgment that Worldbeauty's acts constitute patent infringement under the causes of action asserted in this Complaint;

2) An order preliminarily, and a judgment permanently, enjoining and restraining Worldbeauty, its officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with Worldbeauty, from:

    a) infringing any claim of the Patents-in-Suit; and

    b) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

3) A judgment requiring Worldbeauty to, at Worldbeauty's expense, withdraw from the market, account for, and properly destroy any and all products infringing the Patents-in-Suit;

4) A judgment requiring that Worldbeauty pay Lashify all of its damages caused by Worldbeauty's unlawful acts, including under 35 U.S.C. § 284, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing acts;

5) A judgment awarding Lashify its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285;

6) A judgment that Worldbeauty's infringement has been willful, and ordering Worldbeauty to pay treble damages as provided by law; and

7) Such other relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Lashify hereby demands a jury trial as to all issues so triable.

Dated: July 12, 2022

FENWICK & WEST LLP

By: /s/ Saina S. Shamilov

Saina S. Shamilov (Admitted W.D. Texas)
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200
sshamilov@fenwick.com

Bryan A. Kohm (Admitted W.D. Texas)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: 415.875.2300

Facsimile: 415.281.1350
bkohm@fenwick.com

Jonathan T. McMichael (Admitted W.D. Texas)
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone:  206.389.4510
Facsimile:   206.389.4511
jmcmichael@fenwick.com

Eric A. Menist (Admitted W.D. Texas)
FENWICK & WEST LLP
902 Broadway, Suite 14
New York, NY 10010
Telephone:  212.430.2600
emenist@fenwick.com

Deron R. Dacus
State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Telephone:  903.705.1117
Facsimile:   903.581.2543
ddacus@dacusfirm.com

Attorneys for Plaintiff
Lashify, Inc.