**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| LASHIFY, INC., | CASE NO. 6:22-CV-00776-ADA |
| Plaintiff, | |
| | JURY TRIAL DEMANDED |
| v. | |
| QINGDAO LASHBEAUTY COSMETIC CO., LTD. d/b/a Worldbeauty, | |
| Defendant. | |
| LASHIFY, INC., | CASE NO. 6:22-CV-00777-ADA |
| Plaintiff, | |
| | JURY TRIAL DEMANDED |
| v. | |
| QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a Hollyren, | |
| Defendant. | |

**<u>DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.     LASH EXTENSION(S) ................................................................................1

II.    CLUSTER(S) .............................................................................................3

III.   BASE ........................................................................................................5

      A.    The Plain Language in the Claims Requires "Base" to be Structurally-Distinct from "Clusters" and "Hairs" ...............................................5

      B.    The "Base" Limitation Lacks Written Description Support .................10

IV.   APPLICATION OF HEAT/APPLYING HEAT ...............................................12

V.    DESIGNED...............................................................................................14

VI.   A THICKNESS OF THE BASE; THE BASE … HAS A THICKNESS........................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Aero. Techs., Inc. v. United States,*
124 Fed. Cl. 282 (Fed. Cl. 2015) ............................................................................15

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP,*
616 F.3d 1249 (Fed. Cir. 2010)..................................................................5, 6, 7, 9

*Bicon, Inc. v. Straumann Co.,*
441 F.3d 945 (Fed. Cir. 2006)...............................................................................8, 9

*CA, Inc. v. Netflix, Inc.,*
2021 U.S. Dist. LEXIS 221133 (E.D. Tex. Nov. 16, 2021) ....................................4

*Cordis Corp. v. Medtronic Ave,*
339 F.3d 1352 (Fed. Cir. 2003)................................................................................6

*In re Cuozzo Speed Techs., LLC,*
793 F.3d 1268 (Fed. Cir. 2015) .......................................................................6, 7, 9

*ePlus, Inc. v. Lawson Software, Inc.,*
700 F.3d 509 (Fed. Cir. 2012)........................................................................14, 15

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.,*
93 F.3d 1572 (Fed. Cir. 1996).................................................................................9

*Generation II Orthotics Inc. v. Med. Tech. Inc.,*
263 F.3d 1356 (Fed. Cir. 2001)..............................................................................12

*HTC Corp. v. Cellular Communs. Equip., LLC,*
701 Fed. Appx. 978 (Fed. Cir. 2017).................................................................5, 8

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
358 F.3d 898 (Fed. Cir. 2004)................................................................................12

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
572 U.S. 898 (2014)................................................................................................15

*Neville v. Found. Constructors, Inc.,*
972 F.3d 1350 (Fed. Cir. 2020)...........................................................................6, 9

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
521 F.3d 1351 (Fed. Cir. 2008)...........................................................................1, 8

*Phillips v. AWH Corp.,*
415 F.3d 1303 (Fed. Cir. 2005)................................................................................2

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008)..................................................................................10

*Shire Dev., LLC v. Watson Pharms., Inc.*,
    787 F.3d 1359 (Fed. Cir. 2015)..................................................................................13

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013)....................................................................................1

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998)..............................................................................10, 11

*White v. Dunbar*,
    119 U.S. 47 (1886).....................................................................................................9

# TABLE OF EXHIBITS[1]

| Exhibit | Description |
|---|---|
| A | U.S. Patent No. 11,219,260 (the "'260 Patent") |
| B | U.S. Patent No. 11,234,472 (the "'472 Patent") |
| C | U.S. Patent No. 11,253,020 (the "'020 Patent") |
| D | U.S. Patent No. 11,330,855 (the "'855 Patent") |
| E | U.S. Patent No. 11,330,856 (the "'856 Patent") |
| F | Public Version 2021.05.18 Respondents' Motion for Summary Determination, ITC 337-TA-1226 |
| G | U.S. Patent No. 10,660,388 (the "'388 Patent") |
| H | U.S. Patent No. 10,721,984 (the "'984 Patent") |
| I | RX-0427 (photographs of artificial lashes) |
| J | Excerpts of Public Transcript from ITC Matter ITC 337-TA-1226 |
| K | Lashify's Infringement Contentions against Worldbeauty for the '856 Patent |
| L | Lashify's Infringement Contentions against Worldbeauty for the '020 Patent |
| M | 2021.10.05 Interview Summary from File History of '260 Patent |
| N | The American Heritage Desk Dictionary (5th ed.) "heat" |
| O | McGraw-Hill Dictionary of Scientific and Technical Terms (6th ed.) "heat" |
| P | Oxford Dictionary of English (3d ed.) "heat" |
| Q | Webster's New World College Dictionary (5th ed.) "heat" |
| R | Declaration of Jimmy Mays & Exhibit 1 |
| S | 2021.02.09 Interview Summary from File History of '856 Patent |
| T | 2021.10.05 Interview Summary from File History of '020 Patent |
| U | Excerpts of Rejections and Amendments from File History of '260 Patent |
| V | Excerpts of Rejection from File History of '020 Patent |
| W | Excerpts of Rejections and Amendments from File History of '856 Patent |
| X | Provisional Application |

---

[1] Exhibits A-X are filed with Defendants' Opening Claim Construction Brief. *See* Dkts. 34-2 to 34-25.

## TABLE OF DISPUTED CLAIM TERMS

| Claim Term(s) | Asserted Claim(s) |
|---|---|
| lash extension(s) | '260 Patent (Claims 1–4, 6–12, 14–22, 24–30, 32–36)<br>'472 Patent (Claims 1, 14)<br>'020 Patent (Claims 1–11, 13–19)<br>'855 Patent (Claims 1–5, 8–13, 19)<br>'856 Patent (Claims 1–7, 9-11, 15–20) |
| cluster(s) | '260 Patent (Claims 1, 7, 9–11, 15, 19, 25, 27–29, 33)<br>'472 Patent (Claims 1–5, 7–12, 15–18)<br>'020 Patent (Claims 1–2, 4, 8–9, 14–17)<br>'855 Patent (Claims 1, 13, 16, 21–23)<br>'856 Patent (Claims 1–3, 5, 10–11) |
| base | '260 Patent (Claims 1, 6, 17–19, 24, 35–36)<br>'472 Patent (Claims 1, 5, 7–8, 11, 14, 17–18)<br>'020 Patent (Claims 1–3, 10, 15–16, 18–19)<br>'855 Patent (Claims 1, 3, 11–12, 16, 20, 22) |
| application of heat;<br><br>applying . . . heat | '260 Patent (Claims 1, 6–7, 19, 24–25)<br>'472 Patent (Claims 1, 4, 7, 11, 17)<br>'020 Patent (Claims 1, 2, 3, 4)<br>'855 Patent (Claims 1, 12, 13, 21)<br>'856 Patent (Claims 1, 4, 5) |
| designed | '260 Patent (Claims 1, 8, 16, 19, 26, 34)<br>'472 Patent (Claim 1)<br>'020 Patent (Claim 1)<br>'856 Patent (Claims 18, 19, 20) |
| a thickness of the base;<br><br>the base . . . has a thickness | '260 Patent (Claims 17, 18, 35, 36)<br>'020 Patent (Claims 18, 19)<br>'855 Patent (Claims 3, 20) |

Lashify's invocation of "plain and ordinary meaning" is clearly designed to disguise Lashify's attempts to rewrite the claims and expand their scope beyond what the patentee actually invented. Because the parties have fundamental claim scope disputes, the Court must reject Lashify's "plain and ordinary meaning" proposals and, as the Federal Circuit mandates, resolve the disputes by construing the claim terms to ensure the trial is not injected with the fatal error of asking a jury to resolve a claim construction issue. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-62 (Fed. Cir. 2008) (vacating jury verdict where district court found "the term 'only if' needs no construction" and holding: "By failing to construe this term, the district court left the jury free to consider [the] arguments" raised by the parties during claim construction).

## I.     Lash extension(s)

As an initial matter, the Court should disregard Ms. Baker's conclusory declaration in construing the claims. Regardless of whether she presents the proper definition of a POSITA in this case, or whether she qualifies as a POSITA, she is clearly not acting as one here.[2] *See, e.g., SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1210 (Fed. Cir. 2013) (expert opinions entitled to no weight where "they lack any substantive explanation tied to the intrinsic record [] and they appear to conflict with the plain language of the written description."). Ms. Baker's opinions are improperly based solely on her subjective use of the claim terms in the Hollywood makeup industry generally and are wholly untied to the intrinsic record.[3] Under such circumstances, "a

---

[2] Defendants dispute Lashify's and Ms. Baker's definition of a POSITA. *See* Dkt. 34-19 (Ex. R. (Mays Decl.)), ¶¶ 17-19. Defendants note that Ms. Baker would not qualify as a POSITA under Lashify's own definition during the ITC proceedings. Dkt. 38-3 (Ex. 1) at 8-9 ("a POSITA would have ***a bachelor's degree or higher in materials science, chemistry, physics, or equivalent professional experience***, and experience in makeup artistry including application of artificial lashes.") (emphasis added). The Commission "generally agree[d] with Lashify's proposal" but did "not believe it is necessary for one of ordinary skill to also have specific 'experience in makeup artistry including application of artificial lashes.'" *Id.*

[3] Ms. Baker did not review the file histories of the patents. (Dkt. 38-1 ("Baker Decl."), ¶ 8.)

court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005).

For example, Ms. Baker confusingly asserts that the term "lash extension" "may also be used to describe, for example, individual salon lashes, strip lashes, cluster lashes, ***or the lash extensions disclosed in the patents***." Baker Decl., ¶ 15 (emphasis added). This viewpoint disqualifies Ms. Baker's opinions, because it is irrelevant, for claim construction purposes, how the term "lash extension" is interpreted generally, wholly disconnected from the context of the term in the claims, the specification, and file histories of the patents. The *only* relevant lash extensions are those "disclosed in the patents", yet Ms. Baker adopts a broader view beyond that by expressly considering all other possible uses that encompass prior art expressly disclaimed in the common patent specification.  Specifically, based on her industry experience as a makeup artist, Ms. Baker asserts that the claimed "lash extension may be a strip lash." Baker Decl. ¶ 18. But the ***only*** discussion of strip lashes in the specification are in the Background, where the specification describes *prior art* strip lashes and their drawbacks:

> Alternatively, false eyelashes may be applied directly to an individual's eyelid. False eyelashes come in strips (and thus may also be referred to as 'strip lashes') that can be trimmed to fit the width of the individual's eyelid. While a strip of false eyelashes can be applied in a single motion, false eyelashes are easily distinguishable from the individual's natural eyelashes and may be uncomfortable when worn for extended periods of time.

'260 Patent at 1:43-50 (Ex. A).

The intrinsic record, including the claims themselves, dictate that "lash extensions" do not include strip lashes *within the context of the asserted patents*. Every apparatus claim in the patents claims "a plurality of lash extensions."  If, as Lashify's expert posits, "a lash extension may be a strip lash, and strip lashes are typically a single piece that has the same width as an

individual's eyelid" (Baker Decl., ¶ 18), the resulting lash extension set or system would be wider (or longer) than an eyelid, and thus would extend beyond the natural lashes, eyelid, and eye. Accordingly, by a plain reading of the claims, each lash extension in the claimed "plurality of lash extensions" must necessarily be less than the width of an individual's eyelid, as captured by Defendants' construction. Lashify, relying almost exclusively on Ms. Baker, disagrees. Lashify Br. at 8 ("a strip lash is a lash extension and is not less than the width of an individual's eyelid"). Because Defendants and Lashify have a fundamental dispute regarding the scope of the claim term, the Court cannot adopt Lashify's proposed plain and ordinary meaning construction of lash extension, which encompasses the prior art strip lashes that the claims and specification exclude.[4] The Court should construe "lash extension(s)" to mean "multiple, disconnected segments of artificial hair pieces, where each segment is less than the width of an individual's eyelid."

## II.    Cluster(s)

In its attempt to explain the basis for its plain and ordinary meaning construction for "cluster," Lashify frames the issue by explaining that "clusters of artificial hairs" are "a group or bunch of artificial hairs *that are close together*." Lashify Br. at 9 (emphasis added). This definition injects ambiguity (the opposite of what claim construction should achieve), for how does one of ordinary skill determine whether or not a "group" or "bunch" of artificial hairs are sufficiently "close together" to form a claimed cluster?

Lashify highlights the various examples of clusters in the specification and examples of the use of the word "cluster" outside of the patents to support its position. Lashify Br. at 9, 11. Although Defendants agree that the specification provides examples of clusters, the question at

---

[4] Lashify and Ms. Baker also do not dispute that the claims are limited to artificial hair.

the claim construction phase "is not whether the specification enables a person of ordinary skill in the art to practice the invention, but whether a person of ordinary skill can discern the boundaries of the claims with reasonable certainty." *CA, Inc. v. Netflix, Inc.*, 2021 U.S. Dist. LEXIS 221133, at *45-46 (E.D. Tex. Nov. 16, 2021) ("The Court agrees with Defendant that the 'non-limiting examples' in the specification 'do not on their own expressly define the bounds— the limits—of the claim'") (internal citation omitted)).[5]

Lashify and Ms. Baker both point to Figure 3A for a "close-up of the clusters" (Lashify Br. at 11-12; Baker Decl. ¶ 22[6]), but neither addresses Defendants' fundamental point exemplified by the figure—there is no explanation anywhere in the intrinsic record why certain hairs are included in one cluster versus another, or why certain hairs form one cluster instead of two. *See* Opening Br. at 8-9. Moreover, equating "cluster" with the words "group" or "bunch" simply replaces the indefinite term with a synonym and does nothing to demarcate the bounds of the invention. *See* Lashify Br. at 9, 10; Baker Decl., ¶ 23. The claims and specification do not provide an objective standard for identifying when something qualifies as a cluster, group or bunch of artificial hairs. Focusing on the dictionary definition of "cluster" or the makeup industry understanding of "cluster" sidesteps the real issue—how does one skilled in the art identify a *claimed* cluster? Lashify cannot point to anything in the intrinsic record beyond non-limiting examples to answer the question. The Court should, therefore, hold that the term "cluster(s)" is indefinite.

---

[5] It is irrelevant that another court construed the term "cluster" in a completely unrelated patent over thirty years ago, or that the term is generally used in the makeup industry. *See* Lashify Br. at 11. It is the use of "cluster" in view of the intrinsic record that matters here.

[6] Ms. Baker unhelpfully notes that "the left side of Figure 3A shows nine ***clusters that end in relatively narrow points***, whereas the right side of Figure 3A shows five ***looser, more dispersed clusters*** to provide greater coverage."

III.    **Base**

A.    **The Plain Language in the Claims Requires "Base" to be Structurally-Distinct from "Clusters" and "Hairs"**

"Claim construction begins and ends in all cases with the actual words of the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (cleaned up).  And when "a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention."  *Id.* (cleaned up); *see also HTC Corp. v. Cellular Communs. Equip., LLC*, 701 Fed. Appx. 978, 982 (Fed. Cir. 2017) ("The separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure.").  In this case, the claim language describing the relationship between the recited "base" and "clusters" or "hairs" unambiguously requires the base to be a separate structure that is distinct from the hairs and clusters.  Specifically, every claim of the '260 patent requires "a base, wherein the plurality of clusters **are attached to** the base" and also states that "the artificial hairs" in the clusters "are coupled to one another **at a respective part of the base**."  '260 Patent at 9:5-19, 10:1-18 (Ex. A).  Similarly, the claims of the '472 patent recite methods that include the step of "performing an attachment process to **attach** the plurality of clusters **along the length of a base**" by applying heat to the clusters "to **attach** the plurality of clusters **to the base**."  '472 Patent at 9:2-15 (Ex. B).  Every claim in the '020 patent requires "a base **from which the at least two artificial hairs … protrude**, wherein at least some of the artificial hairs are connected to one another **at a respective part of the base**."  '020 Patent at 9:8-19 (Ex. C).  The claims of the '855 patent also require "a base **from which the at least two artificial hairs … protrude**, wherein at least one of the plurality of clusters **is connected to the base**."  '855 Patent at 9:2-21 (Ex. D).

The Federal Circuit has consistently held that this type of claim language (*i.e.*, "attached" "connected" or "protruding") indicates a structural relationship between *separate and distinct*

*components*.  In *Becton, Dickinson*, for example, the claims recited a "spring means connected to said hinged arm", and the Federal Circuit reversed the district court and held that the "unequivocal language of the asserted claims … requires a spring means that is separate from the hinged arm."  *Becton, Dickinson*, 616 F.3d at 1253-54 ("By its plain terms, … the spring means and the hinged arm are separate structures which are 'connected to' each other. The district court erred … when it later held that its claim construction did not require a spring means that was a distinct structural element from the hinged arm.").  This common sense approach to simple descriptions of a structural relationship between individual parts has been repeatedly endorsed at the Federal Circuit.  *See In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015) (affirming construction of "a speedometer integrally attached to said colored display" as requiring "discrete parts physically joined together as a unit without each part losing its own separate identity" because the "word 'attached' must be given some meaning."); *Neville v. Found. Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("We agree with the district court that the plain meaning of the claim, which requires that the 'protrusion' is 'extending outwardly' from the 'end plate,' does not extend to a structure in which the alleged 'end plate' is an indistinguishable part of the alleged 'protrusion'; an object cannot protrude from itself.").

Lashify's reliance on the *Cordis* decision is misplaced, because the disputed claim language in *Cordis* is nothing like the present case and is certainly not "identical" as Lashify suggests.  Lashify Br. at 16.  In *Cordis*, the claims recited a tubular member having a wall "with a plurality of slots formed therein." *Cordis Corp. v. Medtronic Ave*, 339 F.3d 1352, 1356-57 (Fed. Cir. 2003).  The Federal Circuit rejected the district court's construction requiring that "the slots be manufactured by removing material from a pre-existing wall surface." *Id.* ("Nothing about the phrase 'slots formed therein' suggests that the slots must be formed by a particular process.").  The *Cordis* case is irrelevant here, as Defendants do not contend that the term "base"

requires a specific manufacturing process.  Rather, as explained above, the relevant Federal Circuit precedent consistently holds that claim terms like "attached," "connected," and "protruding" compels a construction of separate and distinct structures.

The term "base" must be construed as separate from the clusters/hairs for the additional reason that a broad construction of "base" allowing it to simply be a portion or area of the clusters/hairs themselves, rather than a separate structure, "cannot be correct" because it would render the claims "facially nonsensical." *Becton, Dickinson*, 616 F.3d at 1255 (cleaned up). Claim 1 of the '260 Patent, for example, would read "the plurality of clusters are attached to [the plurality of clusters]."  Similarly, claim 1 of the '472 Patent would read, "applying heat to at least a portion of the plurality of clusters to attach the plurality of clusters to [a portion of the plurality of clusters]."  None of this would make sense to a POSITA, for it is illogical to describe a component as being attached to itself or protruding from itself.  *See, e.g., Becton, Dickenson*, 616 F.3d at 1255 ("Becton's assertion that the spring means and the hinged arm can be the same structure renders the asserted claims nonsensical. … If the hinged arm and the spring means are one and the same, then the hinged arm must be 'connected to' itself and must 'extend between' itself and a mounting means, a physical impossibility."); *In re Cuozzo*, 793 F.3d at 1280 ("The word 'attached' must be given some meaning. As the Board explained, it would 'be illogical to regard one unit as being 'attached' to itself.'").  The *only* construction of "base" that maintains reasonable clarity is for the "base" to be a distinct structure from the clusters/hairs, to which the clusters/hairs are attached.  This is the ordinary meaning of "base" *in the context of the claims*.

Although Lashify asserts "no construction is necessary," it plainly proposes a construction for the "base" term.  *See* Lashify Br. at 14 ("The word 'base' … is readily understandable to a POSITA—it refers to the bottom portion of the lash extensions").  Proposing a meaning for a claim term under the guise of "plain meaning" is still a proposed construction.

*See, e.g., HTC Corp. v. Cellular Communs. Equip., LLC*, 701 Fed. Appx. 978, 981 (Fed. Cir. 2017) ("Although the Board stated that 'no claim terms require express construction,' … the Board engaged in claim construction when it proceeded to determine whether D'Aviera (and Calder) disclose the 'diverting' and 'controlling' limitations … [and] concluded that the '923 patent requires those steps to be performed by 'separate components,' which is a conclusion about the scope of the '923 patent").  Because both parties propose different "plain" meanings for "base," the Court is obliged to resolve the dispute beyond merely stating "plain and ordinary meaning" to ensure the parties do not inject error into the judgment by presenting this claim construction question to the jury for resolution.  *See, e.g., O2 Micro*, 521 F.3d at 1360-62 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate … when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

Lashify's proposed meaning for "base" as simply "the bottom portion of the lash extensions, from which the artificial hairs and clusters protrude" introduces ambiguity and redundancy, and does not give meaning to the surrounding terms "attached" and "connected." First, some (but not all) claims expressly recite that the hairs of the clusters "protrude" from the base (*e.g.*, '020 Patent, claim 1; '855 Patent, claim 1).  Thus, Lashify's definition cannot be accepted, because it imposes the "protruding" requirement on all claims rendering the express "protruding" limitations in certain claims superfluous.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (claims must be "interpreted with an eye toward giving effect to all terms in the claim.").  "Allowing [Lashify] to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to [the] claimed invention[.]" *Id.*

Next, if the "base" is simply the "bottom" part of the hairs or clusters as Lashify's expert asserts,[7] then the clusters themselves constitute the claimed "base," which, as explained above, is illogical and does not accord with the plain import of the claim language in violation of long-settled law. *See, e.g., White v. Dunbar*, 119 U.S. 47, 52 (1886) ("[I]t is unjust to the public, as well as an evasion of the law, to construe [a claim] in a manner different from the plain import of its terms. This has been so often expressed in the opinions of this court that it is unnecessary to pursue the subject further."); *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (rejecting a proffered construction because "the plain meaning of the claim [would] not bear [such] a reading"). Ms. Baker explains her subjective view of the term "base" in the context of general conversations as a Hollywood makeup artist, but the surrounding language and context of the claims (which she entirely ignores) informs the meaning of "base" in the context of the patents and cannot simply be disregarded. Adopting Ms. Baker's colloquial meaning renders the terms "attached" and "connected" meaningless, and the Federal Circuit has strongly counseled that such terms "must be given some meaning." *In re Cuozzo*, 793 F.3d at 1280 ("[I]t would be illogical to regard one unit as being 'attached' to itself."); *see also Becton, Dickenson*, 616 F.3d at 1255; *Neville*, 972 F.3d at 1357.[8]

---

[7] Lashify's expert, relied on for this asserted plain meaning, says the term "base" refers to the "bottom part of the cluster" or the "bottom of the individual hairs." Baker Decl., at ¶ 24.

[8] Lashify largely ignores the *Becton Dickenson* decision and similar Federal Circuit precedents, and its only attempt to distinguish such cases is an argument that the *In re Cuozzo* decision addressed the term "integrally attached" while the "claims at issue here do not require an 'integral' attachment, rendering *In re Cuozzo* irrelevant." Lashify Br. at 16. This badly misrepresents the *In re Cuozzo* decision. The Federal Circuit in *In re Cuozzo* was clear that the relevant claim term requiring a construction of "discrete parts physically joined" was the term "attached," *not* "integral." 793 F.3d at 1280 ("The word 'attached' must be given some meaning. As the Board explained, it would 'be illogical to regard one unit as being 'attached' to itself.'").

B.     The "Base" Limitation Lacks Written Description Support

Whether the Court considers the written description issue now or later on summary judgment, it is clear that the only reasonable construction for "base", which is explained above, lacks written description support because the asserted patents never describe the invention as incorporating a *separate* base structure.  First, Lashify is wrong to suggest that a written description defense cannot be determined on summary judgment, even in the face of opposing expert testimony.  *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1310-11 (Fed. Cir. 2008) (affirming summary judgment of invalidity for lack of written description; "[T]he declaration by PowerOasis's expert does not raise a genuine issue of material fact[.]"); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159-60 (Fed. Cir. 1998) (reversing jury verdict and finding claims invalid for lacking written description as a matter of law despite expert testimony; "The expert testimony offered at trial does not require a contrary conclusion.").  The present dispute is such a case and is ripe for summary adjudication of this issue.

Lashify cites two portions of the specification that describe a "thread" or "string" and argues that these statements supposedly describe the claimed "base" as a separate structure from the lash hairs and clusters.  *See* Lashify Br. at 17.  Lashify is plainly wrong.  The shared specification *never* refers to a support thread as "a base," *see* '260 Patent at 4:30-34, and expressly distinguishes the invention from the "conventional" prior art practice of using a separate thread or string near the base of the hairs or clusters.[9]

> For example, because the multiple clusters can be heat sealed to one another, the total height at the base of the lash fusion is only 0.05-0.15 mm.  **Conventional clusters, meanwhile, use a string at the base to connect the artificial hairs to one another.  But the presence of the string causes the total height at the base of the cluster to exceed 0.3 mm (e.g., typically 0.3-0.7 mm)**.

---

[9] The specification's discussion of a "support thread" is presented in reference to Figure 2, which is an example of clusters of eyelashes that have been used "by professional lash technicians and cosmeticians," which the specification describes as the "conventional" type of lash in the prior art. *Id*. at 1:63-64, 2:55-57, 4:17-18.

> Moreover, the lash fusions described here have no quantifiable weight.  Therefore, the lash fusions can more easily adhere to an individual's natural lashes and remain secured for longer periods of time.  **Again, the presence of the string causes conventional clusters to have a quantifiable weight that affects how they must be adhered to the individual's natural lashes**.

'260 Patent, 5:14-27 (emphasis added).  It is telling that the only content Lashify could find in the specification that it could spin (even erroneously) as supporting the use of a separate base structure is actually a discussion of the *prior art* that is *different* from the claimed invention and has problems the invention is intended to solve.  The law is clear that specification disclosures like this concerning the prior art *cannot* serve as written description support for the claimed invention.  *See Tronzo*, 156 F.3d at 1159 (finding a lack of written description support for claims broadly construed to encompass any shape of cup, where "the only reference in the '589 patent's specification to different shapes is a recitation of the prior art. … Instead of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup.").

*Every time* the shared specification refers to a "base" it unambiguously describes the base as the *area* of the clusters where two clusters are fused together, not a separate structure that clusters are attached to.  *See, e.g.*, '260 Patent at 3:1-5 ("…a lash fusion can include multiple clusters that are fused together near the inner ends of the artificial lashes (also referred to as the 'base' of the lash fusion) to form a straight line of artificial hairs…"), 3:18-20 ("The base of the lash fusion (i.e., where the multiple clusters are fused together) is intended to be affixed to an individual's natural lashes.").  There is not a single statement in the shared specification of the asserted patents that describes or suggests a lash cluster or lash fusion being "attached" or "connected" to a "base."  Consequently, the claims lack written description support.[10]

---

[10] To the extent Lashify contends that "base" should be construed as simply a "portion" or "area" of the clusters to preserve the validity of the claims, the unambiguous language of the claims does

The Court should construe "base" to be a structure separate from the clusters or lash hairs, and find that all claims reciting "a base" are invalid for lacking written description support.

## IV.    Application of heat/applying heat

The claims expressly require the use of heat ***to create*** the claimed attachment.  Rather than address Defendants' actual proposed construction, Lashify offers up and then attacks a straw man construction—"heat by itself" or "only heat"—that no one has proposed. *See*, *e.g.*, Lashify Br. at 19 ("In other words, defendants' proposal is to redefine…to mean that ***heat by itself***…"), at 20 ("Defendants' proposed construction, which requires the heat—by itself—"), at 21 ("the connection be made ***only by heat***, as defendants propose") (emphasis in original). Lashify uses its straw man construction to repeatedly argue that Defendants' construction is limited to "specific disclosed embodiments" and is "directly contrary to the claim language." Lashify Br. at 20.

Lashify ignores, however, that Defendants' actual proposed construction expressly includes using "a combination of heat and adhesives" to create the securing mechanism. *See*, *e.g.*, Opening Br. at 20 ("heating an adhesive"), 21 ("describing use of a 'heater' to 'cause[] the adhesive to solidify.'"). And Lashify apparently agrees with Defendants that "every single reference to heat in the specification contemplates applying heat in order to ***create the mechanism*** to secure artificial hairs together (or to a base)." *See* Lashify Br. at 20 (the

---

not allow such a construction despite the lack of written description support.  Rewriting the claims under the guise of preserving validity here would be error.  *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 914 (Fed. Cir. 2004) ("Medrad further suggests in passing that the broad reading of 'physical indicia' given by the district court would render the asserted claims … invalid for lack of a sufficient written description … however, the canon that claims should be construed to preserve their validity, if possible, applies only if the scope of the claims is ambiguous. … We therefore may not interpret the claims narrowly because of concerns about their possible invalidity."); *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) ("[C]laims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims.").

embodiments disclose "using heat by itself" and "a combination of heat and adhesives.") (emphasis added). Because Defendants' proposed construction is not limited to using "only" heat in order to create the securing mechanism, Defendants' construction (1) does not exclude embodiments that disclose a combination of heat and adhesives, (2) is not inconsistent with the independent claims of the '260 and '020 Patents, which require "at least…heat", and (3) is not inconsistent with the dependent claims of those patents that require "at least…adhesive," as Lashify argues.

Tellingly, by attacking a construction that Defendants never proposed, and summarily dismissing Defendants' expert testimony as "irrelevant" (*see* Lashify Br. at 19 n. 10),  Lashify never refutes that its plain and ordinary meaning construction "would encompass even incidental, ambient heat that occurs during the manufacturing process or even heat that dissipates from a mechanism that attaches two artificial hairs." *See* Opening Br. at 21. Lashify should not be permitted to extend the claims beyond their true scope and beyond the invention described in the intrinsic record under the guise of "plain and ordinary meaning."

Contrary to Lashify's suggestions, *see* Lashify Br. at 21, Defendants did not argue that there is prosecution *disclaimer* here. Rather, Defendants cited relevant portions of the prosecution history to show that the prosecution histories of the asserted patents are consistent with, and support, Defendants' construction. *See* Opening Br. at 21-22. As part of the intrinsic record, this evidence is relevant and persuasive to the claim construction process even where disclaimer is not an issue. *See Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015) ("Although the prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction."). And, as previously explained, the prosecution history does support Defendants' construction that heat *creates* the attachment: "Applicant argued that it would not be obvious to use heat bonding to connect the lashes of [the

13

prior art reference], … It was discussed reciting that the connection of the artificial lashes is created by heat in order to distinguish from adhesives that give off heat or heat-cure that could be used." Dkt. 34-20 (Ex. S).

The Court should construe the "applying … heat" and "application of heat" terms to mean heat is used *to create* the connection, formation, attachment, or seal.

## V.    Designed

According to Lashify and its expert, the claim limitations stating that lash extensions or the base are "designed to" attach to "the underside of natural lashes" are satisfied by *every single false eyelash product* that attaches to the underside of natural lashes, effectively claiming a monopoly on all products based on an end result or function rather than by any structural boundaries describing *how* the inventors achieved the result.  *See* Baker Decl., ¶ 26; Lashify Br. at 23.  Lashify also contends that Defendants must know what the "designed to" claim language means, because Defendants' products can be attached to the underside of natural lashes.  *Id*. at 24.  These arguments erroneously conflate the concepts of a POSITA being *capable* of performing a function or achieving a result and a POSITA *understanding the boundaries of the claimed invention*.  The Federal Circuit has explained:

> The indefiniteness inquiry is concerned with whether the bounds of the invention are sufficiently demarcated, not with whether one of ordinary skill in the art may find a way to practice the invention. To assess whether a claim is indefinite, therefore, we do not look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent.

*ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012).

Lashify's improper motive is exposed by its adamant opposition to any definition that would provide some meaningful boundaries or clarity based on the teachings of the patents, Lashify Br. at 26, thereby ensuring it can claim infringement simply by pointing to lash extensions that can attach to the underside of natural lashes regardless of the underlying

mechanism for doing so.  The Supreme Court has soundly criticized such strategies, explaining that patent claims "must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them" rather than creating "a zone of uncertainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-10 (2014) (cleaned up).  "[A]bsent a meaningful definiteness check, we are told, patent applicants face powerful incentives to inject ambiguity into their claims."  *Id*.

Not surprisingly, then, Lashify is wrong to suggest that claim language like "designed to" is never found indefinite.  To the contrary, when such language is construed as unbounded as Lashify proposes here, the claims in dispute are properly held indefinite.  *See, e.g., Advanced Aero. Techs., Inc. v. United States*, 124 Fed. Cl. 282, 303-04 (Fed. Cl. 2015) (finding "being **designed to** deflect" indefinite; "[W]hen claims recite a description of a problem to be solved or a function or result to be achieved by the invention, the boundaries of the claim scope must be clear.") (emphasis added).  Because Lashify's non-specific, result-oriented claim language "has in effect claimed everything … under the sun" that allows lash extensions to attach to the underside of natural lashes; the "claims are … indefinite."  *ePlus*, 700 F.3d at 519.

## VI.    A thickness of the base; the base … has a thickness

If the Court properly construes "base" as a separate structure distinct from the clusters/hairs, then Defendants agree the "thickness" limitations receive their plain and ordinary meaning, which would be the thickness of the distinct base structure.  If, however, the Court does not construe "base" properly, allowing it to simply refer to a portion of the clusters or hairs themselves, then the term is indefinite because clusters are made of many eyelash hairs and the claim provides no clarity about where on the clusters or on which hairs the relevant thickness measurement should be taken.

DATED:  February 17, 2023               Respectfully submitted,

                                           BY:  */s/ Mark Miller*
                                              Hui Shen
                                              **DORSEY & WHITNEY LLP**
1401 New York Ave. NW, Suite 900
Washington DC, 20005
Telephone: (202) 442-3000
Email: shen.hui@dorsey.com

Mark Miller
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Email: miller.mark@dorsey.com

B. Russel Horton
**GEORGE BROTHERS KINCAID &
HORTON, LLP**
114 West 7th Street Suite 1100
Austin, TX 78701
Telephone: (512) 495-1400
Fax: (512) 499-0094
Email: rhorton@gbkh.com

*Counsel for Defendants Qingdao Lashbeauty
Cosmetic Co., Ltd., d/b/a Worldbeauty and
Qingdao Hollyren Cosmetics Co., Ltd. d/b/a
Hollyren*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of February, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record, and that a true and correct copy of the foregoing document and accompanying exhibits were served via electronic mail to counsel of record for all parties.

BY: */s/ Mark Miller*
Mark Miller