## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| LASHIFY, INC., <br><br>            Plaintiff, <br><br>    v. <br><br> QINGDAO LASHBEAUTY COSMETIC CO., LTD. d/b/a WORLDBEAUTY, <br><br>            Defendant. | Civil No. 6:22-cv-00776-ADA-DTG <br><br> **JURY TRIAL DEMANDED** |
| LASHIFY, INC., <br><br>            Plaintiff, <br><br> v. <br><br> QINGDAO HOLLYREN COSMETICS CO., LTD. d/b/a HOLLYREN, <br><br>            Defendant. | Civil No. 6:22-cv-00777-ADA-DTG <br><br> **JURY TRIAL DEMANDED** |

## <u>ORDER ON DISCOVERY DISPUTES</u>

The Court issues the following order on the parties' discovery disputes discussed during the hearing on January 5, 2024.

**1.      Discovery sanctions for misrepresentations and failure to comply with Court orders regarding production of ESI.**

     **A.      Lashify's Position**

Lashify moved to compel defendants to produce ESI communications from relevant custodians.  This Court held a hearing on November 1, 2023 (Dkt. 81) and granted-in-part Lashify's motion.  The Court ordered the parties to (1) identify two ESI custodians and five search terms

1

per custodian and (2) by November 10, produce responsive documents or object to the over-breadth of search terms.  Dkt. 92 (11/1/2023 Hearing Tr.) at 22:16-23:22, 29:8-30:12.

Defendants failed to produce any ESI or object to the overbreadth of search terms by November 10.  Indeed, as of December 5, with a 30(b)(6) deposition tomorrow and the close of fact discovery ten days away, defendants still have not produced any ESI at all.

There is no justification for defendants ignoring the Court's order.  On November 10, defendants' counsel's stated that they had difficulty obtaining ESI from their clients in China, and thus required a modest extension to providing hit counts by the week of November 20 and completing all ESI production by November 29.  In the interest of avoiding a dispute, and based on defendants' representations, Lashify did not object.  But defendants' promised dates came and went, and defendants repeatedly ignored Lashify's requests for further information.

On December 4—just one hour before a scheduled lead counsel meet and confer—defendants finally sent the hit counts that the Court had ordered them to provide by November 10.  But defendants' email still did not agree to provide the Court-ordered ESI, instead raising an untimely objection that certain of Lashify's search terms were purportedly overbroad.  And although Lashify asked for an expected production date, defendants said they could not provide one.  Nor, despite Lashify's requests, did defendants share the details in the December 8 declaration of Ms. Kolter until the day of defendants' response to this motion.

Lashify cannot wait any longer for defendants to comply with the Court's order.  The 30(b)(6) deposition of Worldbeauty begins December 6, fact discovery closes on December 15, and expert reports are due on December 21.  As explained in Lashify's motion to compel, the ESI sought relates to infringement, including defendants' practice of disputed claim limitations; willful infringement; and issues of damages and validity, including knowledge and copying of

Lashify.  Defendants should not be permitted to hide unfavorable evidence by flouting an unambiguous Court order.

Defendants also misrepresented the scope of their ESI.  Defendants insisted that relevant communications would be encompassed in the email and of a single custodian.  Dkt. 92 (11/1/2023 Hearing Tr.) at 22:16-24, 23:14-22.  This representation was not correct.  Hollyren's corporate representative confirmed that customers communicate with individual members of its sales team—not a single custodian.  Documents produced by a small number of defendants' customers also confirm that defendants communicate in forms other than email, and with custodians other than defendants' single custodians.

Defendants' violation of the Court's order and misrepresentations regarding their ESI warrants discovery sanctions.

<u>Requested Relief</u>:

- The Court should order defendants to immediately comply with the Court's November 1 order and produce all ESI responsive to Lashify's search terms for Lashify's identified ESI custodians.

- Because defendants misrepresented the scope of their ESI and custodians, the Court should order defendants to immediately produce all ESI responsive to Lashify's search terms for each of the individuals that the Court held defendants must produce for Rule 30(b)(1) depositions (see Dkt. 94).

- The Court should order that defendants may not dispute their knowledge of and intent to copy Lashify, Lashify's asserted patents, and Lashify's patented products in discovery or at trial pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii).

- The Court should award Lashify its reasonable expenses, including attorneys' fees, incurred in bringing this motion to enforce the Court's order pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**B.    Defendants' Position**

Defendants are actively collecting and reviewing ESI for production. The declaration of Erin Kolter details Defendants' efforts on this front. Moreover, the parties have jointly moved to extend the case schedule by two months to complete the recently-ordered depositions and ESI production (Dkt. 96 in -00776).

Defendants expect to make a substantial production of ESI this week and will continue to make rolling productions until that process is complete. Defendants will also work with Lashify to schedule the remaining ten depositions with sufficient time to review Defendants' ESI production in advance. Lashify's requests for discovery sanctions are unreasonable, illogical, and unfair. Given the gravity of Lashify's requested sanctions, Defendants strongly request a hearing if the Court is not inclined to deny Lashify's request.

Lashify accuses Defendants of "misrepresentations." Defendants invite the Court to review the hearing transcript citations provided by Lashify (22:16-24 (discussing agreement to provide certain 30(b)(6) testimony), 23:14-22 (directly responding to the Court's question regarding the scope of Defendants' ESI proposal). Defendants never "insisted that relevant communications would be encompassed in the email and of a single custodian" as Lashify alleges. Allegations that counsel made misrepresentations to the Court should be scrutinized closely, and Lashify's misrepresentation of the record when making such a claim should be enough to deny Lashify's request (and certainly the request for ten additional ESI custodians that is premised only on the "misrepresentation").

Defendants are not trying to "hide unfavorable evidence." To the contrary, Defendants will produce email and WeChat and WhatsApp messages responsive to Lashify's provided search terms, but the process simply takes more time than Lashify demands, as shown in the Kolter Declaration. There are at least 309,834 search term hits on Lashify's search terms across the ESI of the identified custodians (four total). Kolter Decl. ¶15. The parties' proposed extension would allow Defendants to complete this immense task, given the additional hurdles created by producing such information from China.

Lashify's proposed sanction that Defendants cannot "dispute their knowledge of and intent to copy Lashify, Lashify's asserted patents, and Lashify's patented products" based on broad ESI search terms such as "heat! or hot!" and "under!/10 (lash! or eyelash!)" is illogical. Both the use of heat and applying lashes under the natural lashes are admittedly in the prior art, as Lashify's owner and inventor admitted under oath. Lotti Dep. Vol. 1 at 96:9-14; 46:5-10.  Further, Lashify has had significant discovery on these issues outside of ESI (e.g. 30(b)(6) testimony, interrogatories, discovery from the ITC action).

Absolving Lashify of its burden of proof while also removing Defendants' ability to defend themselves against Lashify's claims is plainly unfair where Defendants are not refusing to provide the information Lashify seeks, but just need additional time to complete the complex task.

Requested Relief: Deny Lashify's request and further grant the parties' joint motion to amend the case schedule so that the parties can complete the discovery ordered in November 2023.

### C.    Court's Order

The Court **GRANTS-IN-PART** Lashify's motion.  By January 12, 2024, the parties are **ORDERED** to complete their production of email for search terms that were not objected to on

grounds of breadth.  By January 12, 2024, the parties are **ORDERED** to separately file a status update regarding the status of production of email and non-email documents, and a date certain for completing the production of any remaining non-email documents.  If defendants object to the breadth of any search terms, defendants **SHALL** include the hit counts for each objected-to term in their status update.

**2.      Discovery sanctions for failure to comply with Court orders to provide complete information regarding the accused products.**

      **A.      Lashify's Position**

Defendants have failed to comply with multiple Court orders to produce complete information about the accused products.  Lashify requests that the Court (1) order defendants to immediately produce complete technical and sales information and samples of the accused products; and (2) issue discovery sanctions for defendants' non-compliance.

Lashify's discovery requests seek basic information about the accused products, including model numbers, manufacturing processes, product samples, and sales information.  Exs. B-C (Responses to Interrogatory Nos. 1-2).  Despite countless promises and two Court orders, defendants' discovery remains incomplete.

For example, defendants' responses to Interrogatory Nos. 1-2 identify some model numbers and their manufacturing processes.  But defendants separately provided sales spreadsheets purporting to include all U.S. sales, and those spreadsheets include model numbers that do not appear in defendants' interrogatory responses or sample productions.  In many cases, there is no way to correlate the models in defendants' spreadsheets with models in the interrogatory responses.  As one example, Hollyren's sales spreadsheet identifies a product with significant U.S. sales since January 2022.  But Hollyren did not produce any sample of this product, nor does it appear in Hollyren's interrogatory responses, meaning Lashify has no information about how the

product is made.  The same is true for many other Hollyren and Worldbeauty products.  Lashify provided defendants with a list of nearly 100 Worldbeauty products and more than 170 Hollyren products for which defendants have not provided information in their interrogatory responses, sample production, or both.  Collectively, this missing discovery encompasses significant U.S. sales.

Defendants' discovery suffers from other issues as well.  Worldbeauty's representative testified about Worldbeauty's sales spreadsheets, and Lashify cannot determine how many pairs of accused lashes were sold using the sales data.  Ex. D (Li Dep. Tr.) at 217:9-218:20, 219:4-220:7, 231:4-17, 232:7-233:23, 236:1-237:20.

The Court has twice ordered defendants to provide complete information about the accused products.  In August, Lashify moved to compel a complete identification of defendants' accused products, manufacturing information, and sales information.  Dkt. 77 at 1-9.  The Court granted all three requests in relevant part.  *Id.* at 5, 8, 10.  When defendants failed to provide complete information, Lashify moved to compel again.  The Court again ordered defendants to provide complete discovery responses and product samples.  Ex. A (November 8 Proposed Order) at 13-18.

As of this date, Lashify still lacks complete discovery from defendants for scores of products representing significant U.S. sales.  Defendants have provided no date by which they will provide this discovery.  There is no justification for defendants' failure to provide this discovery; indeed, defendants cannot claim they lack samples for many of the products, as defendants continued to sell them throughout the discovery period and were required to preserve and produce them.  Nor can defendants dispute the relevance of the basic technical and financial information

sought.  Sanctions are warranted for defendants' violation of multiple Court orders, which has required three motions to compel to obtain discovery about the accused products.

Requested Relief:

- The Court should order defendants to immediately comply with the Court's prior orders and produce complete discovery regarding the accused products, including:

  - sales spreadsheets that correlate the model numbers identified in the interrogatory responses with the model numbers in defendants' sales spreadsheets;

  - sales spreadsheets that include accurate quantities of the products being sold;

  - interrogatory responses describing how the products are made; and

  - product samples for any remaining products that have yet to be produced.

- The Court should award Lashify its reasonable expenses, including attorneys' fees, incurred in bringing this motion to enforce the Court's two prior orders pursuant to Fed. R. Civ. P. 37(b)(2)(C).

### B.    Defendants' Position

Defendants have been working diligently to provide sales information, manufacturing information, and product samples in response to Lashify's vague and expansive infringement allegations. Moreover, Defendants continue to investigate and provide additional information in response to alleged issues identified by Lashify as such issues are raised.

Defendants each sell hundreds of product models at any given point in time, and have identified hundreds of product models in these litigations despite limited focus or direction from Lashify regarding its actual infringement allegations.

Worldbeauty made an additional production of product samples last week, and both Defendants are preparing additional product sample productions that will be sent from Qingdao, China.

Turning to Lashify's specific complaints, Hollyren has supplemented its responses to interrogatory nos. 1 and 2 to identify and provide manufacturing information for product models identified by Lashify (see 12/22 supplement). Hollyren notes, however, that the details of the identified manufacturing methods were already disclosed in earlier responses to interrogatory no. 2 as shown in Lashify's Exhibit B (see, e.g., June 12 and July 14 responses). Lashify has had this detailed manufacturing information for months.

Further, Hollyren had already identified manufacturing information for and produced product samples of many of the "more than 170 Hollyren products" identified now by Lashify. (see, e.g., June 22 and November 3 product sample productions).

Worldbeauty has already addressed Lashify's complaint about its sales information. After Worldbeauty's 30(b)(6) deposition earlier this month, Worldbeauty worked diligently to specifically identify the unit quantity (in sets/pairs) for each identified sale, and that information has been produced. See WOR0043789.

Requested Relief: Deny Lashify's requested relief in light of the Court's prior orders and deny Lashify's request for fees and expenses.

### C.   Court's Order

The Court **GRANTS-IN-PART** Lashify's motion.  Defendants are **ORDERED** to provide as complete a response as possible to the issues identified in Lashify's January 5, 2024 email to defendants by January 12, 2024, including by correlating the model numbers with model numbers in prior interrogatory responses, stating that defendants are providing the requested samples by a date certain, or stating that the samples are no longer available.  By January 12,

2024, Lashify may also provide lists of additional missing information regarding (1) how defendants' products are manufactured or (2) the sales of the accused products (including unit information).  If Lashify does so, defendants **SHALL** respond to the issues in the additional lists by no later than one week after receiving the lists from Lashify.

3.      **Balance sheets and unredacted income statements.**

        A.      **Defendants' Position**

**Balance Sheets**

        Lashify has produced balance sheets for 2019 (Exhibit A) and 2020 (Exhibit B) as well as a partial 2023 balance sheet through April (Exhibit C).  Lashify has refused to produce balance sheets for 2021 and 2022.

        Each of Lashify's produced balance sheets include line items for "Intangible Assets" including "Patents" "Accumulated Amortization Patents" and "Total Patents."  *See* Exs. A-C. From 2019 to April 2023, the value Lashify assigned to its patents increased.  *Id.*  The Asserted Patents in this case were issued in 2022.  *See* ECF 1-1, 1-2, 1-3, 1-4.  For Defendants' expert to gain a complete picture of the evolving value Lashify assigns to its patents, including how that value may have changed after the Asserted Patents were granted, Defendants need Lashify's 2021 and 2022 balance sheets and an updated 2023 balance sheet.

        Because Lashify is seeking lost profits and reasonable royalty damages, this evidence is plainly relevant and should be produced.  *See Superior Indus., LLC v. Masaba, Inc.*, 2011 WL 13136008, at *2-3 & n.1 (D. Minn. May 17, 2011) (finding plaintiff's company-wide financials relevant to patent damages and granting motion to compel); *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 2006 WL 1465313 at *8 (N.D. Cal. May 24, 2006) (granting motion to compel; finding plaintiff's "financial statements are relevant to the issue of damages"); *Uni-Splendor*

*Corp. v. Remington Designs, LLC*, 2017 WL 10581102, at *4-5 (C.D. Cal. Sept. 5, 2017) (compelling disclosure of audited financial statements, finding them "plainly relevant" to evaluating patent damages).

Lashify has no reasonable basis for arbitrarily withholding the balance sheets for 2021 and 2022.  The fact that Lashify produced other balance sheets proves that Lashify considers the Protective Order adequate to protect any confidentiality concerns and proves there is no undue burden on Lashify.  Lashify should be compelled to produce the requested balance sheets.

## Income Statements

Lashify has produced Profit & Loss statements from January 2017 through December 2020, which include line items for legal services and litigation expenses.  *See* Exhibits D, E. However, in producing updated Income Statements to cover January 2018 through April 2023, Lashify redacted the lines containing costs for legal services.  Exhibit F.  Lashify also produced an updated Income Statement with data through October 2023, and instead of redacting legal services costs, Lashify simply removed them.  Exhibit G.

Given the Protective Order, there is no justification for Lashify's selective redaction of factual financial data (data that Lashify previously produced with earlier financial statements). Lashify is seeking to recover lost profits and reasonable royalty damages from Defendants in this case.  Defendants and their experts are entitled to a complete picture of Lashify's financial positions over time in order to adequately evaluate the damages-related issues in the case.  *See Superior*; *Phase Four*; *Uni-Splendor*, *supra*.  And because Lashify produced earlier financial statements disclosing legal expenses, there are no grounds for Lashify to claim prejudice or privilege. Lashify should be compelled to produce **_unredacted_** income statements from 2018 through 2023.

     <u>Requested Relief</u>:  Defendants ask the Court to order Lashify to produce balance sheets for 2021 and 2022, and an updated balance sheet for the entire year 2023.  Defendants also ask the Court to order Lashify to produce unredacted income statements for 2018 through 2023.

     **B.**    **Lashify's Position**

**<u>Balance Sheets</u>**

     Balance sheets are not relevant to any issue in the case.  Defendants' assertion that balance sheets are relevant to lost profits or the "evolving value" of Lashify's intellectual property is incorrect, as defendants know.  Lashify's witnesses explained in deposition that, for accounting purposes, the "Patents" entries in the balance sheets reflect only the cost of acquiring patents (*e.g.*, legal fees and filing fees) but in no way reflect the "value" of any inventions claimed in any patent.

     To avoid a dispute, Lashify agrees to produce the requested balance sheets.  Lashify expressly reserves the right to object to inaccurate or misleading characterizations of the balance sheets, including in expert reports or at trial.

**<u>Income Statements</u>**

     Lashify has produced an income statement showing a detailed monthly reporting of its income, costs, gross profits, and expenses—including marketing, administrative, payroll, facilities, and outside services such as accounting and legal expenses.  *See* Ex. G to Defendants' submission.  Lashify agreed to provide this income statement from January 2018 to present day, even though the patent infringement damages period extends from January 2022 forward.  This document provides all the information defendants need to understand Lashify's sales and costs, to calculate profit margins for Lashify's sales of its patented products, and to understand Lashify's "financial positions over time."  Defendants do not identify any reason they cannot calculate Lashify's sales or profits using the income statement Lashify has already produced.

Defendants' only complaint is that Lashify's income statement does not break down Lashify's spend on "Legal & Professional Services" on a litigation-by-litigation basis.  In other words, defendants already have Lashify's total monthly legal spend, but now ask to have separate line-items for Lashify's outside counsel bills for each of Lashify's litigations.  This information is irrelevant.  Indeed, defendants do not even try to articulate a reason that they would need this information to prepare damages theories in this case, and none exists.

None of defendants' arguments supports their request.  First, defendants' cited cases do not address legal bills.  Instead, they stand for the unremarkable proposition that financial statements may be relevant in patent cases.  Lashify has already produced this.  Ironically, in violation of their own case law, defendants—the accused infringers—that have not produced any financial statements at all.  Second, defendants suggest that Lashify "previously produced" more detailed information and must do so now.  But defendants' examples (Exs. D-E) include the exact same breakdown of information that Lashify has provided in this case:  "Legal General Services," "Patent Infringement Protection /Litigation," and "Trademark."  Third, the income statement is not a typical "document" and instead exists only in Lashify's accounting software.  It must be generated on request.  Lashify's up-to-date income statement was provided by Lashify to counsel in its current form.  Defendants identify no requirement for Lashify to generate an income statement that includes additional, irrelevant information such as monthly outside counsel bills—information that defendants have not even provided themselves.

Requested Relief:

- The Court should deny defendants' request for additional balance statements as moot, with the understanding that Lashify may object to any attempt by defendants to use the balance sheets for inaccurate or misleading purposes.

- The Court should deny defendants' request for additional income statements.

### C.    Court's Order

The Court **DENIES** as moot defendants' request for additional balance sheets from Lashify.  The Court **DENIES** defendants' request for an additional or unredacted income statement from Lashify.

## 4.    ESI relating to Agreement.

### A.    Defendants' Position

Defendants should be granted leave to submit additional limited ESI requests relating to an Agreement between Lashify and a third party.

Lashify entered an Agreement with a third party, wherein the third party is licensed to sell lash products manufactured by Lashify and covered by the Asserted Patents.  *See* Exhibit H. This is the first, and apparently **_only_**, agreement Lashify has entered that permits a third party to sell products covered by the Lashify patents.  Lashify, however, failed to timely produce information about its relationship with the third party.

On May 25, Lashify responded to Defendants' First set of RFPs, including RFP 26 requesting documents relating to "any actual or proposed assignment, license, contract, or other agreement relating to (1) the use, evaluation, testing sale, and/or manufacture of the subject matter disclosed in the Asserted Patents."  *See* Exhibit I.  Lashify also responded to RFP 31, which asks for "communications related to the negotiations … leading up to" any agreements requested under RFP 26.  *Id*.  Lashify did not, however, produce any documents relating to its relationship with the third party, including the Agreement.  Lashify also failed to identify the third party in response to Interrogatory No. 19 asking for facts relating to "any Lashify Licensee" that has "sold or offered for sale any products or services covered by an Asserted Claim."  *See* Exhibit J.

On November 14, one day before the deposition of Lashify's corporate designee on the topic of Lashify's "intellectual property, or technology licenses or agreements," Lashify produced documents relating to the third-party relationship, but still did not produce the Agreement. During that deposition, the Agreement was identified, for the first time, but Lashify continued to withhold its production.

On November 28, Defendants' counsel demanded that Lashify produce the Agreement that should have been produced much earlier.  On November 29 after 9:00 pm the evening before the deposition of Lashify's founder, Sahara Lotti, Lashify produced the Agreement.

Unfortunately, given Lashify's reluctant and belated production of the Agreement, Defendants did not appreciate its importance when the parties finalized ESI search terms nearly two weeks earlier on November 17.  Following Ms. Lotti's deposition, Defendants asked Lashify to allow them to propose a couple more ESI search terms targeting communications relating to Lashify's relationship with the third party.  Lashify refused.  Given the untimely production of the Agreement, and given its core relevance as Lashify's **one and only agreement** allowing a third party to sell licensed products covered by the Asserted Patents, there is good cause to allow limited additional ESI discovery relating to the Agreement and relationship.

<u>Requested Relief</u>:  Defendants ask the Court for leave to submit two additional search terms relating to the Agreement between Lashify and the third party for the same email custodians previously searched.

### B.    Lashify's Position

Lashify has a reseller agreement with a third-party under which (1) Lashify manufactures and sells certain products to the third party; and (2) the third party sells those products through its own sales channels.  The agreement (Ex. H to defendants' submission) does not grant any pa-

tent rights to the third party, for the asserted patents or any other patents. Nor does it even mention the asserted patents or any other patents. The agreement has no relevance to patent damages or a reasonable royalty.

In response to defendants' discovery requests, Lashify agreed to produce patent licenses for the asserted patents. Ex. I at 38-40. The agreement is not a patent license and is not relevant. After having Lashify's discovery responses for more than five months, defendants contacted Lashify during 30(b)(6) depositions to request production of the agreement. To avoid a dispute, Lashify collected and produced the agreement the next day so defendants could review it and explore it in depositions. Defendants did so. The witnesses confirmed that the agreement provides no rights in any patents to the third party. Ex. K (Lotti Dep. Tr.) at 19:3-4, 19:22-24, 23:18-21. Lashify has produced financial records showing the third party's purchases from Lashify pursuant to the agreement. Lashify also conducted a search for additional, non-ESI documents and did not locate any such documents.

Despite having the agreement, despite questioning multiple witnesses in depositions, and despite the agreement on its face having ***no relevance*** to the value of the patented technology, defendants now ask the Court to reopen ESI discovery so that they may explore documents "relating to" the irrelevant agreement. Defendants' arguments fail for several reasons.

First, defendants repeatedly characterize the agreement as a "license," suggesting that the agreement or the royalty bears some relationship to the value of Lashify's asserted patents. The express language of the agreement confirms that this is incorrect. Nor, contrary to defendants' suggestion, did Ms. Lotti testify that the third party is licensed to use "the Lashify patents." Defendants cite testimony where Ms. Lotti testified that Lashify makes its own patented products

and sells them to the third party; and the patents were "***not*** licensed to them." Ex. K (Lotti Dep. Tr.) at 22:3-23:1, 49:12-51:11.

Second, defendants unsurprisingly fail to articulate any relevance or proportionality of additional, unspecified ESI search terms beyond the words of the agreement itself.

Third, as the Court is aware, defendants fought to narrow the scope of ESI discovery during a November 1 hearing in this case. Lashify fully complied with the Court's ESI orders; defendants did not.

The Court should deny defendants' unsubstantiated and non-proportional request to reopen ESI discovery to explore unspecified issues regarding a reseller agreement.

<u>Requested Relief</u>: The Court should deny defendants' request for additional ESI discovery.

### C.      Court's Order

The Court **GRANTS** defendants' limited request to submit two additional search terms related to the agreement for the same email custodians previously searched. By January 8, 2024, defendants may submit two additional search terms to Lashify. Within seven calendar days of receiving defendants' request, Lashify **SHALL** disclose to defendants the number of hits responsive to the search terms and, if appropriate, assert objections to the breadth of the search terms.

## 5.      Depositions of defendants' employees under Rule 30(b)(1).

### A.      Lashify's Position

Lashify moved to compel depositions of defendants' employees in their individual capacities. Dkt. 94. The Court granted Lashify's motion on November 28, 2023, ordering defendants to make their employees available for the noticed depositions. *Id.*

Lashify contacted defendants the next day, on November 29, to request dates for the depositions. Defendants responded that they would provide dates, but that the dates would likely be

after the then-existing fact discovery deadline of December 15.  The parties agreed to a two-month extension of the discovery period in light of these depositions and other pending discovery deficiencies (Dkt. 96 at 1-2), and defendants agreed to make their witnesses available such that the depositions could be completed by January 24, 2024 under the new schedule.

Lashify again asked for information about defendants' witness availability on December 7.  Defendants never responded.  Lashify followed up again on December 15, asking for information about the deposition dates by December 18.  Defendants ignored this request, too.  Defendants did not provide any deposition dates between the Court's November 28 order and December 28, nor did they respond to Lashify's requests for information about the deposition dates. The scheduling extension was predicated on defendants promptly complying with the Court's November 28 order.  At the time Lashify submitted this statement to defendants last week, only *20 business days* remained for defendants to propose dates for *at least 10 depositions*, for the parties to confirm those dates, and for the parties to prepare for and take the depositions.  Defendants' delay in providing the witnesses for deposition—as ordered by the Court in November—is unfairly prejudicial to Lashify.

After weeks of silence from defendants, and on the evening their response was due, defendants provided *for the first time* windows of availability for the depositions.  Notably, even after weeks of looking into witness availability, the windows proposed by defendants are unnecessarily narrow and do not reflect reasonable compliance with the Court's order from November:

- Hollyren offers only 3 business days and 1 holiday weekend for the depositions of their 6 witnesses;

- Worldbeauty offers only 2 business days and a weekend for the depositions of 3 of their witnesses;[1] and

- Worldbeauty still provides no information about when Ms. Cui, a key witness, will be available for a deposition.

After waiting 5 weeks to provide any deposition dates, defendants now unreasonably demand that Lashify's attorneys take all of the depositions over a few days.  Lashify should not have to repeatedly contact defendants over weeks—or prepare and repeatedly revise a motion—to obtain reasonable dates for depositions that the Court ordered in November.  Yet that is what happened here, as is apparent from defendants' silence over many weeks.

<u>Requested Relief</u>:  The Court should order defendants to provide dates of availability for the depositions, to be completed by January 24, 2024, such that Lashify need not conduct multiple overlapping depositions over weekends to obtain the depositions that the Court ordered in November.  The Court should order the parties to meet and confer regarding a mutually agreeable schedule to conduct the depositions.

The Court should award Lashify its reasonable expenses, including attorneys' fees, incurred in bringing this motion to enforce the Court's order pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**B.    Defendants' Position**

Lashify's dispute is largely premised on the false accusation that "Defendants never responded" to Lashify's communications relating to scheduling depositions of Defendants' employees.  The fact is, Defendants' counsel responded to Lashify's December 7th email in less than three hours on the same day informing Lashify that "Defendants will commit to making

---

[1] Defendants later modified their position, this time with an alternative proposal of 4 business days and a weekend for the depositions of Hollyren's 6 witnesses; and 3 business days for the depositions of 3 of Worldbeauty's witnesses, which are still unreasonably narrow.

their witnesses available for deposition such that the depositions can be completed no later than January 24, 2024 – with one possible exception. Ms. Cui may not be able to travel to Hong Kong for a deposition due to personal reasons. In addition, counsel informed Lashify on November 29 that Runqing Miao no longer works for Hollyren so Hollyren cannot make Mr. Miao available for a deposition. Defendants' immediate commitment to making their witnesses available for deposition in response to Lashify's inquiry and its ongoing effort to do so proves its compliance with the Court's Order (Dkt. 94).  Lashify's self-serving narrative of the correspondence history is misleading.

As all of the depositions will be held remotely, counsel for Lashify (and the court reporter(s) and translator(s)) will not have to travel for the depositions, rather, it is Defendants' employees that must obtain travel visas and arrange for at minimum three days away from home to travel to Hong Kong for deposition. Given the logistical challenge, despite Lashify's accusation of "weeks of silence," Defendants have been working hard the entire time to identify available dates for the witnesses, and have now acquired that information.

For scheduling purposes, Hollyren's witnesses will generally be available for deposition between January 11 and January 16. Worldbeauty's witnesses will generally be available for deposition between January 19 and January 22. Alternatively, Hollyren's witnesses could be generally available between January 16 and January 21 and Worldbeauty's witnesses could be generally available between January 22 and January 24. Defendants are available to meet and confer regarding the specific deposition schedule as soon as January 2, 2024.  Defendants have, therefore, complied with the Court's Order as well as the commitment they made on December 7 to make the witnesses available prior to January 24, 2024—a commitment Lashify was apparently agreeable to.

Defendants have never refused to provide available dates for these depositions.  And nothing in the Court's Order required those dates to be provided by a certain date.  Lashify does not contend Defendants are in any way in violation of the Court's Order.  Lashify's discovery dispute is entirely unnecessary here; and Lashify's request for fees is unsupported and unwarranted.

While the proposed deposition schedule will be busy, Defendants provided these dates a month in advance, and Lashify has a large team of skilled lawyers to staff these remote depositions.  Lashify does not claim it cannot take the depositions as proposed. Lashify cites Defendants' continued efforts to negotiate and provide more options for the depositions as somehow evidence against Defendants; but this simply shows Defendants' good faith.

<u>Requested Relief</u>:  The Court should deny Lashify's request without prejudice to re-raise as necessary and the Court should deny Lashify's request for fees and expenses.

### C.    Court's Order

The Court **DENIES AS MOOT** Lashify's motion.  The parties are **ORDERED** to further meet and confer to agree on logistics for the depositions.

Signed this 16th day of January, 2024

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE