# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| LASHIFY, INC., | § | |
|     Plaintiff and Counterclaim Defendant, | § § § § | |
| v. | § | CIVIL NO. W-22-CV-00776-ADA-DTG |
| QINGDAO LASHBEAUTY COSMETIC CO., LTD., | § § § § | |
|     Defendant and Counterclaim Plaintiff. | § § | |
| LASHIFY, INC., | § § | |
|     Plaintiff and Counterclaim Defendant, | § § § § | |
| v. | § | CIVIL NO. W-22-CV-00777-ADA-DTG |
| QINGDAO HOLLYREN COSMETICS CO., LTD, | § § § § | |
|     Defendant and Counterclaim Plaintiff. | § § | |

## REPORT AND RECOMMENDATION ON COUNTERCLAIM-DEFENDANT'S MOTION TO DISMISS (ECF NO. 63)

**TO:  THE HONORABLE ALAN D ALBRIGHT,
UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Plaintiff and Counterclaim-Defendant Lashify, Inc.'s ("Lashify") Motion to Dismiss and Strike Counterclaim-Plaintiffs' Counterclaim Allegations against Qingdao Worldbeauty Cosmetic Co., LTD and Qingdao

Hollyren Cosmetics Co., LTD (collectively "Qingdao"). ECF No. 63. Having considered the parties' submissions, the exhibits, and oral argument at the August 23, 2023, hearing, the Court recommends that Lashify's Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This patent infringement case involves competitors in in the field of cosmetics, specifically, the field of artificial eyelashes. Plaintiff and Counterclaim-Defendant, Lashify, is incorporated under the laws of Delaware and maintains its principal place of business in California. ECF No. 49 at 26. Defendant and Counterclaim-Plaintiff, Qingdao, is a foreign company formed under the laws of China. *Id*.

On July 12, 2022, Lashify brought actions against Qingdao for unlawfully copying Lashify's products and infringing Lashify's patents. ECF No. 63 at 1. Lashify amended its complaint to assert claims of false advertising, false designation of origin, and unfair competition. *Id*. Qingdao answered Lashify's complaint on December 14, 2022. *Id*. at 1–2. Qingdao filed counterclaims against Lashify on March 17, 2023, asserting claims of false patent marking under 35 U.S.C. § 292 and false advertising under the Lanham Act. *Id*. at 2. These counterclaims are the subject of Lashify's Motion to Dismiss.

On April 11, 2023, Qingdao sought leave to amend its counterclaims to include Lashify's founder, Sahara Lotti, as a party. *Id*.; *see also* ECF No. 56. Lashify does not oppose the motion to amend pleadings (as it understood they were granted as of right at this stage) but instead filed this motion. This Rule 12(b)(6) Motion to Dismiss Counterclaims was brought by Plaintiff and Counterclaim-Defendant, Lashify, and filed on May 8, 2023. Defendant and Counterclaim.

Plaintiff, Qingdao, filed a response in opposition, ECF No. 66, on May 22, 2023. Lashify subsequently filed a reply to the opposition, ECF No. 67, on May 30, 2023.

After a thorough consideration of the entire record, the Court issues the following Report and Recommendation.

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) Motion to Dismiss, "a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement of relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. at 555. Factual assertions are presumed to be true and considered in the light most favorable to the nonmoving party, but mere conclusory statements or recitation of the elements of the cause of action alone are not enough to withstand a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To state a claim under the False Marking Statute, 35 U.S.C. § 292, a plaintiff must allege that: (1) the defendant marked an unpatented article with patent language; (2) the defendant intended to deceive the public; and (3) the plaintiff suffered a competitive injury as a result." *Norix Grp. Inc. v. Corr. Techs., Inc*., 2018 WL 3729324, at *2 (N.D. Ill. 2018) (citation omitted). The second element—deceptive intent—is subject to Rule 9(b)'s heightened standard. *See id.* *2 ("The *second element* sounds in fraud, so a plaintiff must plead it with the requisite particularity under Rule 9(b).") (emphasis added.

## III.  ANALYSIS

**A.  False Patent Marking under 35 U.S.C. § 292.**

   **i.   The False Patent Marking claim is not time barred.**

Lashify seeks to dismiss the false marking claim under 35 U.S.C. § 292 because it was not brought within the statute of limitations period. False marking claims are subject to a five–year

statute of limitations period. *Juniper Networks v. Shipley*, No. C 09-0696 SBA, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009). However, half of the alleged false markings occurred within the 5 yearlimitations period and the claim is, therefore, not time barred.

Qingdao points to eight (8) instances of purported false marking by Lashify: 1) a social media post stating its Fuse Control Wand was "patented" on Dec. 1, 2017; 2) a social media post stating its Lash Lozenge was "patented" on Dec. 6, 2017; 3) a social media post stating its Lash Cartidge was "patented" on Mar. 8, 2018; 4) a social media post stating its Gossamer artificial eyelash was "patented" on Mar. 12, 2018; 5) a social media post stating one of its artificial eyelash styles was "patented" on Mar. 18, 2018; 6) a social media post stating its Lashify system was "patented" on Jan. 29, 2019; 7) a social media post stating its Charcoflex formula was "patented" on Aug. 10, 2020; 8) a website claim on Apr. 11, 2023 stating that its Gossamer artificial eyelashes are covered by U.S. Patent No. 10,660,388. ECF No. 63 at 4–5. Qingdau contends that each marking is an act that triggers or re-triggers the five-year statute of limitations for false patent marking claims.

Qingdao asserts that because all of the statements are currently still available on Lashify's website, the continuous violation theory applies. ECF No. 66 at 1–2.  To support a continuing violations theory, an overt act that causes injury within the limitations period must occur. *Hypertherm, Inc. v. Am. Torch Tip Co.*, No. 05-cv-373-JD, 2007 WL 2695323 at *4 (D.N.H. Sept. 11, 2007). Under § 292, the overt impermissible act is the *marking* of an article, not the publication of the false mark. *Juniper*, 2009 WL 1381873 at *6. In *Juniper*, the court held that the continuous posting of a falsely marked article constituted, at most, one discrete act of mismarking. *Id*. The act triggered the start of the statute of limitations at the time the article was originally mismarked. *Id*. In *Juniper*, the original violation of § 292 occurred in October 2001 and the article was

subsequently published multiple times with the false marking. *Id*. The case was filed in 2009, and the court held that the statute of limitations expired in 2006, 5 years from the date of the *act* of mismarking, and it did not restart each time the article was published. *Id*. The *Juniper* court held that multiple *postings* of an article that has been falsely marked does not give rise to a continuous violations theory to overcome a statute of limitations period. Finally, at least one District Court in Ohio has held that new claims of false markings accrue and reset the limitations period each time an article is falsely marked. *United Prod. Sols., Ltd. v. Tara Toy Corp.*, No. 5:10CV01718, 2011 WL 3566849 at *5 (N.D. Ohio Aug. 12, 2011) (stating that an action under 35 U.S.C. § 292 would not be time-barred and denied plaintiffs request to extend time to effectuate service).

In harmonizing the two decisions, the Court believes there must be a new or different false marking violation in order to properly apply the continuous violations theory, not merely a continuous posting of the same falsely marked article.

The Court finds that there are sufficient allegations of falsely marked articles occurring withing the applicable limitations period. Qingdao filed its counterclaims on March 17, 2023, ECF No. 49. Looking only at the date on which the act of false marking occurred, not the repeated or continuous posting of such article on social media, to be within the statute of limitations, the markings would have to occur on or after March 17, 2018. Here, there are four alleged false markings made within the five-year limitations period: the Mar. 18, 2018, Jan. 29, 2019, Aug. 10, 2020, and Apr. 11, 2023, false markings. Therefore, Plaintiff's claim is not time-barred.

**ii.     There is Marking of an Unpatented Article.**

Qingdao has sufficiently alleged multiple instances of marking of an unpatented article. An unpatented article includes articles marked with, affixed with, or used with the word "patent," "patent pending," or "patent applied for," that indicate the article is patented when it is not, that an

application for patent has been made when it has not been, or that an application is pending when it is actually is not pending. 35 U.S.C. § 292(a). As noted above, Qingdao identifies eight (8) distinct instances where Lashify used the word "patented" on its social media posts to describe the patented status of its products, when allegedly, the products were not patented.

In response, Lashify notes that at least two of the markings were accurate and Qingdao failed to contradict that claim. ECF No. 67 at 2, n.3. Lashify argues that it held a European patent for its Fuse Control Wand at the time the mark was promoted. *Id*. However, "to the extent there is a mismarking, it is actionable notwithstanding the existence of other valid patents." *BPI Sports, LLC v. Thermolife, Int'l LLC*, No. 19-60505-CIV-SMITH, 2020 WL 10180910, at *9 (S.D. Fla. Jan. 9, 2020) (Denying defendant's motion to dismiss false marking claim despite the existence of other valid patents covering some, but not all claims of the defendant's falsely marked product). Additionally, the claim that the Fuse Control Wand was patented suggests Lashify held a U.S. patent, which it did not receive until November 16, 2021. ECF No. 66 at 4, n.5. Therefore, despite an allegedly valid patent in Europe, Qingdao has sufficiently plead a claim for false marking.

Lashify additionally argues that the ITC determination that the '388 patent does not cover its "Gossamer Lashes" does not affect the patent coverage because ITC determinations are not binding law. However, an alleged discrepancy between the defendant's marking and its prior litigation history is sufficient to allege false marking. *See Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 17-14-JBF-SRF, 2019 WL 10252725 at *17 (D. Del. Apr. 30, 2019). Further, Lashify did not receive a U.S. patent directed towards artificial eyelashes until May 26, 2020, more than two years after the March 12, 2018, social media post regarding its patented Gossamer artificial eyelashes. ECF No. 66 at 2. Qingdao therefore has sufficiently alleged the false marking element.

  **iii.**    **Sufficient Facts are Pled to Allege an Intent to Deceive.**

Qingdao has sufficiently alleged that Lashify had the requisite intent to deceive when it falsely marked its articles as "patented." The intent to deceive is an element that sounds in fraud; therefore, the plaintiff must plead this element with particularity pursuant to Federal Rule of Civil Procedure 9(b). A rebuttable presumption of an intent to deceive is created by alleging facts showing that a defendant made a false statement suggesting that the product was patented and knew that the statement was false. *Pequignot v. Solo Cup Co.*, 608 F.3d. 1356, 1362–62 (Fed. Cir. 2010). The District Court of Delaware has held that, at the pleading stage, "the inference of intent to deceive may arise from evidence that a defendant knew or should have known the marking was false." *Brinkmeier v. Graco Childs. Prod. Inc.*, 767 F. Supp. 2d. 488, 497 (D. Del. 2011). Additionally, in *Cooling & Applied Tech., Inc. v. Morris & Assocs.*, that court opined that in an instance where a party marks a product as patented for the first time (in contrast to failing to remove a marking of an expired patent), the decision to mark could not be merely negligent. *See Cooling & Applied Tech., Inc. v. Morris & Assocs.*, No. 2:15-CV-02211, 2016 WL 11597611, at *6 (W.D. Ark. Dec. 21, 2016). The company's "sophistication" can also be a factor to consider when determining the requisite intent to deceive. *Norix Grp., Inc. v. Correctional Techs., Inc.*, No. 17-CV-07914, 2018 WL 3729324, at *4 (E.D. Ill. Aug. 6, 2018).

Lashify did not receive a U.S. patent for any of the marked products until May 26, 2020, which was multiple years after the social media posts regarding the patented status of its products were posted. Lashify also does not specifically deny that the products were falsely marked in its Motion to Dismiss, ECF No. 63, or in its Reply, ECF No. 67. Lashify has repeatedly publicized its knowledge of the workings of the U.S. patent system and proclaims its sophistication in its knowledge of U.S. patent law. It is reasonable to believe Lashify would know which of their products are covered by patents, and which are not. Further, Lashify was marking products for the

first time as patented, not failing to remove expired patents. In its reply, ECF No. 67, Lashify noted the dates upon which it received the patents for the previously marked patented articles. At this stage of the case, based on the facts alleged by Qingdao and Lashify's own claims of sophistication, the presumption that Lashify knew that the social media posts contained unpatented articles is sufficient to satisfy the relevant intent to deceive element.

### iv. There is a Sufficient Showing of Suffering a Competitive Injury.

Qingdao has sufficiently alleged suffering a competitive injury due to Lashify falsely marking articles as patented. 35 U.S.C. § 292 requires a private party to have suffered a competitive injury because of false marking to bring suit. The injury sustained must have been a result of the violation of § 292. 35 U.S.C. § 292(b). The party must specifically allege that it lost sales, saw profits drop, or experienced any other cognizable injury because of the alleged false marking. *Norix Grp, Inc.*, 2018 WL 3729324 at *4. However, the Rule 9(b) heightened pleading standard does not apply when asserting competitive injury. *Cooling*, 2016 WL 11597611 at *4.

Qingdao points to eight (8) allegations that support the suffering of a competitive injury. ECF 66 at 9–10. Specifically, 1) by improperly and knowingly falsifying intellectual property rights, Lashify has impeded lawful market entry and competition including as it relates to Qingdao; 2) Lashify's false representations have been accepted as true and proliferated by relevant consumers, creating a landscape that is prohibitive of competition and new market entrants like Qingdao; 3) The false reputation of legitimate intellectual property rights in the eyes of relevant consumers has harmed and tagged Qingdao and others as frauds and copycats; 4) Consumers who have internalized Lashify's false messaging are primed to immediately dismiss competitors as "uncreative wrongdoers"; 5) Lashify sought to deceive potential customers into believing it is an

innovator and that competitors were "copycats" with the express purpose of driving sales away from competitors; 6) Lashify was successful in driving sales away from competitors, including Qingdao, to Lashify based on its false representations; 7) Lashify's customers believe and rely on Lashify's representations when deciding what products to purchase; 8) consumers have commented that "I can not believe the amount of copycats out there I… refuse to try anything else" and "I would NEVER buy a knock-off brand". ECF No. 66 at 9–10.

At this stage of the litigation, and in taking the factual allegations in the light most favorable to the non-movant, the Court finds that Qingdao has met the burden of alleging sufficient facts to demonstrate suffering a competitive injury. Qingdao has sufficiently plead and alleged facts to demonstrate the elements of a potential violation of false patent marking pursuant to 35 U.S.C. § 292. The Court recommends that the Motion to Dismiss Qingdao's Counterclaim as it relates to falsely marking articles as patented should be **DENIED**.

B.  **False Advertising Under the Lanham Act**

Lashify also seeks to dismiss Qingdao's counterclaim for false advertising under the Lanham Act by broadly arguing there are no alleged false statements. Additionally, Lashify requests dismissal under the theories that 35 U.S.C. § 292(b) preempts Lanham Act claims when not furnished with an additional element, the claims are precluded under the *Dastar* principle, and the allegations are precluded by the *Noerr-Pennington* doctrine. The Court takes each issue in turn.

   i.  **False advertising is Not Barred Under 35 U.S.C. § 292.**

Lashify argues that the false advertising claim alleged by Qingdao is preempted by the false patent marking statute, 35 U.S.C. § 292. Lashify asserts that where a claim turns on conduct

regulated by a patent statute, any other claim for the same conduct is preempted. ECF No. 63 at 12. More specifically, Lashify asserts that Lanham Act claims are preempted by the false marking statute absent an additional element, such as bad faith. *Id*. While the latter assertion is true, Lanham Act claims are not automatically barred by 35 U.S.C. § 292 because "there is nothing in … 35 U.S.C. § 292 to clearly and manifestly indicate Congress intended to limit false advertising claims under the Lanham Act." *Custom Seal v. Duro-Last Roofing*, No. 6:11-CV-122, 2012 WL 12930886, at *5 (E.D. Tex. Sept. 20, 2012) (finding Lanham Act claim not preempted); *see Cooling*, 2016 WL 11597611, at *8 (same).

Here, Qingdao does assert that Lashify acted in bad faith by knowingly marking products as being "patented." .ECF No. 66 at 12. Because Qingdao asserts an additional element in its Lanham Act claim, the claim is not automatically preempted by 35 U.S.C. § 292.

### ii.   *Dastar* **Bars Claims of Inventorship and Innovation.**

The five statements allegedly made by Lashify that Qingdao bases its false advertising claim upon are inventorship and innovation claims that are barred by the *Dastar* principle. False advertising under the Lanham Act requires there to be a false or misleading statement of fact in connection with goods or services. *Misko v. Backes*, 3:16-CV-3080-M (BF), 2017 WL 3328123, at *3 (N.D. Tex. July 14, 2017). Qingdao bases its claim on five statements allegedly made by Lashify: 1) Ms. Lotti is "the leading innovator worldwide when it comes to lash technology" ECF No. 49 at 28; 2) Lashify and Ms. Lotti are "The Mother of Invention" *Id*.; 3) Lashify invented "the first DIY lash extension" and "Underlash Technology" *Id*. 29; 4) Lashify and Ms. Lotti are the inventor of the "worlds [sic] only" and the "worlds [sic] first DIY lash extension system" *Id*. 30;

5) Ms. Lotti "invented the most natural-looking false lash system in the industry" *Id*. (from this case).

The Lanham Act prohibits advertising that "misrepresents the nature, character, qualities, or geographic origin of another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the United States Supreme Court held that the plaintiff could not bring a false origin claim under the Lanham Act when the defendant repackaged and sold as its own videotapes of the plaintiff's television series. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 23 (2003). The Lanham Act reference to the origin of goods "refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Id*. 37–38. The *Dastar* principle was also applied to misrepresentations of inventorship. *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300 (Fed. Cir. 2009). In *Baden*, the defendant advertised its basketballs as "innovative" which implied that it created something new. *Id*. 1302–03. The court held that the plaintiff's false advertising claim under the Lanham Act failed because "authorship, like licensing status, is not a nature, characteristic, or quality as those terms are used in Section 43(a)(1)(B) of the Lanham Act." *Id*. 1307.

The statements alleged by Qingdao are statements of inventorship, e.g., "The leading *innovator* worldwide", "The *Mother of Invention"*, Lashify *invented* "the first DIY lash extension." Because inventorship, like authorship, does not refer to the nature, characteristics, or qualities of the good itself, false advertising claims regarding inventorship fail. Qingdao's false advertising claim under the Lanham Act is therefore barred under the *Dastar* principle.

### C. Inappropriate Application of *Noerr-Pennington* Doctrine

Lashify additionally argues that many allegations from Qingdaos' counterclaims are barred by the *Noerr-Pennington* doctrine; however, the *Noerr-Pennington* doctrine is not applicable to this case at this stage of the litigation. The *Noerr-Pennington* doctrine serves to protect private parties from liability when they petition the government for laws or interpretations of existing laws favorable to them. *Video Intern. Prod., Inc. v. Warner-Amex Cable Commc'n, Inc.*, 858 F.2d 1075, 1083 (5th Cir. 1988). Typically, the "*Noerr-Pennington* Doctrine is only properly analyzed through a consideration of evidence outside of the pleadings and as such, is not usually appropriately considered in a Rule 12(b)(6) context." *Constr. Cost Data, LLC v. Gordian Grp., Inc.*, No. H-16-114, 2017 WL 2266993, *6 (S.D. Tex. Apr. 24, 2017). *See also Reed v. Marshall*, No. H-21-3942, 2022 WL 799765, at *3 (S.D. Tex. Mar. 16, 2022) ("the court cannot analyze whether the *Noerr-Pennington* doctrine should apply at the pleading stage of this case") (denying motion to dismiss based on *Noerr-Pennington*); *Eon Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-cv-00317-LED-JDL, 2013 WL 12040726, at *5 (E.D. Tex. May 17, 2013) ("the Court finds resolution of the applicability of *Noerr-Pennington* doctrine inappropriate for a 12(b)(6) determination"). Therefore, the *Noerr-Pennington* doctrine may be more appropriate in the summary judgment stage of the litigation but is not readily applicable here at the 12(b)(6) dismissal stage.

Further, the "*Noerr-Pennington* doctrine bars any claim… that has as its gravamen constitutionally protected petitioning activity." *Eon Corp.*, 2013 WL 12040726, at *5. The *Noerr-Pennington* doctrine may therefore be appropriate for a 12(b)(6) dismissal only if its applicability is apparent on the face of the pleadings. *Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 883 (S.D. Tex. 2019). Petitioning activity is not the conduct at issue in Qingdaos' counterclaims, at least based on the face of the pleadings, and is thus an inappropriate defense at this stage of the case.

**D.  The Court Does Not Have Personal Jurisdiction Over Sahara Lotti**

    **i.  There Are No Minimum Contacts With the State of Texas**

Qingdao has not asserted facts to establish that Sahara Lotti had the requisite minimum contacts with the forum state of Texas for the court to have personal jurisdiction over her. Courts do not have jurisdiction over a nonresident defendant unless the defendant has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "fair play and substantial justice." *Diamler AG v. Bauman*, 571 U.S. 117, 126 (2014). Minimum contacts are established when a defendant has "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The court focuses on the relationship among the non-resident defendant, the forum state, and the litigation at issue. *Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F. Supp. 2d 648, 651 (N.D. Tex. 2000).

Qingdao asserts that Ms. Lotti, as the CEO and website administrator of the Lashify website, has established minimum contacts with Texas by her postings on social media and the Lashify website. However, social media posts are not sufficient to confer jurisdiction, particularly where there are no allegations that suggest the posts were "in any way directed to Texas, specifically curated for a Texas audience, or that the [defendant] knew [the plaintiff] resided in Texas." *Bell v. Moawad Grp., LLC*, No. 17-cv-00073-SS, 2017 WL 2841679, at *5 (W.D. Tex. June 30, 2017). Qingdao does not provide any evidence, other than that Lashify sued Qingdao in Texas, of Ms. Lotti's personal contacts with the state of Texas. ECF No. 66 at 18. Ms. Lotti has also not personally availed herself to the protections of Texas law as Lashify, not Ms. Lotti

individually, is the named party to the suits. *Id.*; ECF No. 63 at 17. Without establishing minimum contacts, the court does not have personal jurisdiction over Ms. Lotti as an individual.

### ii. Piercing the Corporate Veil Under an Alter Ego Theory is Inapplicable

Qingdao has not alleged sufficient facts to support an alter ego theory to pierce the corporate veil to gain personal jurisdiction over Ms. Lotti. The Firth Circuit has held that there are three categories which a court may pierce the corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud." *Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994). Alter ego liability only applies when there is "such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice. *L.B. Benon Fam. Ltd. v. Wells Fargo Bank, N.A.*, No. 21-cv-01115-XR, 2022 WL 16825204, at *3 (W.D. Tex. Nov. 7, 2022).

Courts must consider a variety of factors when determining whether an individual should be considered the alter ego of a corporation. The alter ego theory is shown from the total dealings of the corporation and the individual. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). Factors include the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. *L.B. Benon*, 2022 WL 16825204, at *3.

Qingdao does not assert specific factual allegations that support an alter ego relationship between Ms. Lotti and Lashify. The only fact Qingdao asserts is that Ms. Lotti is the administrator of the Lashify website and controls the content of the website. ECF No. 66 at 18. Control over the

company website is hardly sufficient to hold that the separateness of the individual and corporation has ceased to exist. The facts supporting piercing the corporate veil are few, if not non-existent. Therefore, there are not sufficient facts pled to show the alter ego theory applies to have personal jurisdiction over Ms. Lotti.

## CONCLUSION

The Court recommends that Counterclaim Defendant Lashify Motion to Dismiss be **GRANTED IN PART** with regards to the dismissal of Counterclaim Plaintiff Qingdao's False Advertisement claim under the Lanham Act and **DENIED IN PART** with regards to the dismissal of Qingdao's False Patent Marking under 35 U.S.C. § 292.

It is further recommended that the Court does not have personal jurisdiction over Lashify's founder, Ms. Sahara Lotti, in her individual capacity. She, therefore, should not be joined as a party to the pending litigation and that part of the Motion to Dismiss is recommended to be **GRANTED**. Defendant's Motion for Leave to add Counterclaims (ECF No. 56) is **MOOT** in light of the above rulings.

## OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings are recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

Signed this 30th day of January, 2024.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE